## Salmon Creek Lumber and Mining Co. *versus* Dusenbury.

1. The name of a warrantee or owner written by the surveyor immediately outside of the drafts of a new survey, is a call for the lands of that warrantee as an adjoinder.

2. After twenty-one years a presumption arises that the lines of a "chamber survey" were run as described in the official draft, but this is merely a presumption and will not, of itself, control the actual calls of the survey.

3. The effect of what might be taken as calls may, however, be rebutted by such facts and circumstances as clearly show that the surveyor did not intend to limit the survey by its calls.

October 6th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Forest county:* Of October and November Term 1885, No. 29.

Ejectment, by the Salmon Creek Lumber and Mining Company against William A. Dusenbury, to recover possession of a strip of land, situate partly in Kingsley and partly in Howe township, described in the writ as follows: "Bounded on the northeast by Warrant No. 5104; on the northwest by Warrants Nos. 5266, 5267, 5268 and 5269; and on the southwest by a line running southeast from the northwest corner of Warrant No. 5128; and on the southeast by other lands of the plaintiff, and being parts of Warrants Nos. 5105, 5108, 5109 and 5128, containing nine hundred and fifty acres, more or less."

On the trial, before BROWN, P. J., plaintiff gave in evidence warrants to Jonathan Mifflin for tracts of land numbered 5105, 5108 and 5109, dated February 4th, 1794, each for one thousand acres; also drafts of surveys of the same made by Ennion Williams, deputy surveyor. On these drafts, immediately outside of the northwestern boundary line, was written the words "Geo. Meade." The return of the surveyor general and also the patents to Mifflin, both of which were given in evidence, called for the Meade lands as the northwestern boundary in these words, "thence by land of G. Meade." Plaintiff also offered in evidence Warrant No. 5128 to Dr. Jos. Redman, dated February 5th, 1794, also draft of the same by the deputy surveyor and the return of the surveyor general and patents. Neither the survey nor the patent for this tract called for the Meade tract on the northwest; it was described as bounded by other "surveyed land."

[Salmon Creek Lumber Co. v. Dusenbury.]

Plaintiff then deduced title from these patentees to himself and claimed that the northwestern boundary of these tracts was the Meade land and that the land in dispute was included in these tracts.

Defendant claimed title by virtue of a patent for this strip of land, granted to him September 29th, 1882, and claimed that the warrants to Mifflin and Redman did not extend to the Meade line.

Plaintiff claimed that the northwestern boundary line of its land was as indicated by the solid line in the following diagram,

which was the known southeastern boundary line of certain lands warranted to George Meade before the warrant to Redman and Mifflin and surveyed on the same day as the Mifflin tract.

The defendant claimed that the northwestern boundary of the Mifflin and Redman tracts was as indicated by the dotted line. The strip between these lines is the premises in dispute.

It was agreed that the line from the south corner of 5129, northeasterly to the east corner of 5102, is an original line, as proved by Mr. Whittekin, of the Mifflin warrants; and that the line running northwesterly from the eastern corner of 5102 to the beech corner of 5282 is an original line also, as testified to by Mr. Whittekin, of the Mifflin warrants; and further, that there never was a line found running from the beech corner of 5282 southwest parallel with the line first mentioned.

From the fact that the survey of the Meade land was made at the same time as that of the Mifflin land and by the same surveyor and from the further fact that the words " G. Meade " were written along the northwestern boundary line of the Mifflin tracts, plaintiff claimed that the line surveyed for George Meade was the boundary of 5105, 5108, 5109 and 5128.

Defendant, on the other hand, claimed that the surveyor in 1794 never intended to adopt and never did adopt the Meade land as the northwestern boundary, and, in order to sustain this position, showed that if the Mifflin warrants extended to the Meade line they would contain a larger quantity of land than was called for by the return of the surveys, that the only surveyed lines of the Mifflin tracts were the southeastern and northeastern lines, that the balance was platted work and that if a line were run southwest from the northeastern corner of tract 5101, being one of the tracts warranted to Mifflin, which said corner was marked by a beech tree, it would leave a strip of land between the Meade and Mifflin tracts, for which defendant had made application to the Board of Property as vacant and for which the state have given him a patent.

Plaintiff requested the court to charge as follows :

" 1. The returns of the surveys made in pursuance of warrants numbered respectively 5105, 5108, and 5109, and the patents granted for the several tracts so surveyed, calling for land of George Meade on the northwest, the said tract must, in the absence of any other line marked on the ground for its northwestern boundary, be carried to the line of the said land of George Meade."

*Answer.* " This point assumes that the surveys made in pursuance of the warrants named call for the Meade lands. We

are not prepared to say from the surveys that such is the correct interpretation of the surveys, but say, as we have already said in the general charge, that if the surveyor adopted the line of the Meade lands as the boundary of the warrants named, then the northwestern line of said warrants does extend to the line of the Meade land."

"2. The return of survey made in pursuance of warrant numbered 5128, and the patent granted for the tract so surveyed, calling for surveyed land on the northwest, the said tract must, in the absence of any other line marked on the ground for its northwestern boundary, be carried to the line of the Meade surveys, if there was no other surveyed land to the southwest of that line."

*Answer.* "This point assumes that the survey of the warrant named calls for surveyed lands on the northwest. We are not prepared to say that the survey is such that it should be interpreted as a call, but we say, as we have already said in the general charge, that if the surveyor adopted the line of the Meade land as the boundary of the warrant named, then the northwestern line of such warrant does extend to the line of the Meade land."

Defendant requested the court to charge, *inter alia,* as follows:

"6. That the name of George Meade, merely written on the paper containing his return, as the owner or supposititious owner of land northwest of the Mifflin block or surveys, is not a call for any line of the Meade surveys or evidence of his intention to adopt the line of the Meade surveys as the northwestern boundary of the surveys of the Mifflin warrants."

*Answer.* "We think that the name, George Meade, written on plot which accompanied the return of survey, is not without more, a call for any line of the Meade land; but we think it is evidence proper to be taken into account by the jury upon the question as to whether the surveyor did adopt the line of the Meade surveys as the northwestern boundary of the surveys of the Mifflin warrants."

"7. The absence of any mention of Meade lines or lands in the returns of the surveyor who surveyed the Mifflin and Redman warrants, is evidence that he did not adopt any such line as the boundary of the surveys then made." *Answer.* "Affirmed."

"14. That the original returns of the deputy surveyor, E. Williams, on the Mifflin warrants, do not call for the Meade surveys." *Answer.* "Affirmed."

The court charged the jury, substantially, that if they were satisfied from the evidence that the surveyor, who made the surveys in 1794, did not adopt the Meade line as the north-

western boundary of the land now owned by plaintiff, the verdict should be for the defendant, otherwise for the plaintiff.

Verdict for defendant and judgment thereon. Plaintiff took this writ, assigning for error the answers of the court to the points as above given.

*C. Heydrick* and *J. H. Osmer*, (*S. D. Irwin*, *F. B. Guthrie* and *L. R. Freeman* with them), for plaintiff in error.—The Meade line is called for as the northwestern boundary by the survey, and the construction of this written instrument is for the court: Chitty on Contracts, 81. The name of a warrantee or owner written by the surveyor outside of the lines of the draft of survey has uniformly been held and treated as a "call." Such was the case in Younkin *v.* Cowan, 34 Pa., 198. There the name was written upon the draft of survey opposite each external line and while no question was made as to the office or purpose thereof, yet the court speak of and treat them as "calls," and the calls so marked controlled the decision of that case, and must control the decision of this case in favor of the plaintiff below unless overruled. The doctrine of that case has been cited with approbation by this court and never questioned. See Wagner *v.* Wagner, 68 Pa., 392; Craft *et al. v.* Yeaney, 66 Pa., 210; Brolaskey *v.* McClain, 61 Pa., 146; Pett. *v.* Gaw, 15 Pa., 218; Ake *v.* Mason, 101 Pa., 17. Judge WOODWARD, in Quinn *v.* Heart *et al.*, 43 Pa., 337, states the result of the authorities to be, that the lines run on the ground are true surveys, and when they can be found, will control the "calls" for a natural or other fixed boundary, and conclusively establish the survey, but when a younger survey calls for an older as an adjoiner and no lines are found to have been marked for the younger on the side on which the other is called for, the line of the older becomes the division line of the two tracts, or in other words, the younger is to be laid so as to adjoin the older. And the rule as stated in this case has been recognized and restated as the law in all subsequent adjudications when this question has arisen. Quinn v. Heart *et al.* is cited with approbation in Malone *et al. v.* Sallada *et al.*, 48 Pa. St., 419; Eister *v.* Paul, 54 Pa., 196; Northumberland Coal Co. *v.* Clement, 95 Pa., 126. See also Ake *v.* Mason, 101 Pa., 17; Cox *v.* Couch, 8 Barr, 147.

The return made by the surveyor general into the land office, and upon which the patents issued is the official act of the officer making it, and is, as touching any and every fact appearing in the case, conclusive: Fritz *v.* Brandon, 78 Pa., 343. Nor is there anything that in any degree modifies the rule contended for by the plaintiff in Ormsby *v.* Ihmsen, 10 Cas, 462, and kindred cases.

[Salmon Creek Lumber Co. v. Dusenbury.]

*Rasselas Brown* and *George A. Jenks* (*S. P. Johnson* with them), for defendant in error.

The return of the survey made into the surveyor general's office, and a lapse of twenty-one years afterwards, without any attempt being made during that interim to contravene or take exception to it, is conclusive evidence that it was regularly made: Nieman *v.* Ward, 1 W. & S., 79; Collins *v.* Barclay, 7 Barr, 67, 73; Ormsby *et al. v.* Ihmsen, 10 C., 462; Bellas *v.* Cleaver, 4 Wr.,267; Malone *v.* Sallada, 12 Wr., 419; Glass *v.* Gilbert, 8 P. F. S., 266; Packer *v.* Schrader Mining Co., 1 Out., 379.

Unless there was a Meade line on the northwest side of the Mifflin block of surveys, and that line described and adopted by the surveyor in locating the Mifflin block of warrants, the northwestern line of that block was a chamber survey and was so returned into the land office in 1794.

The facts show, and the jury have found, that no such adoption was made or intended to be made by the surveyor who laid those warrants.

The surveyor, if he did intend or expect to make the Meade land or line the northwest line of the Mifflin surveys, was laboring under a manifest mistake as to where the Meade line was, and even a call, made under such a misapprehension of fact, would be disregarded.

The northwestern line of the Mifflin block of surveys, by the facts, the concession of the plaintiff and the verdict of the jury, being simply a chamber and not an actual survey, and having been returned into the land office more than 21 years without caveat, has become fixed in its location by the courses and distances of its survey as returned, as firmly as if it had been marked with compass, chain and axe in 1794, and not to be contradicted or rebutted by any fact or circumstances or diverted from its course by calls for either natural or artificial boundaries.

Mr. Justice Gordon delivered the opinion of the court, October 26th, 1885.

We cannot agree with the learned judge of the court below that the name, "George Meade," written by the deputy surveyor, on the northwest of his separate drafts of the Mifflin surveys, was not of itself a call for the Meade line. It was, and could have been, nothing else. For what other conceivable purpose could the deputy have placed that name as it is found on the drafts, other than to show that warranted land of George Meade adjoined on the northwest? He knew the position of those lands, for he had surveyed both blocks upon the same day, and we cannot suppose that, departing from his official duty, he

designedly intended to leave a narrow, oblong vacancy between the two.  The surveyor general certainly understood from the return of his deputy that the George Meade tracts were adjoinders, for he so certified.  But the deputy himself has left us in no doubt as to what he intended, for in his certificate attached to his survey of Jonathan Mifflin tract, No. 5101, he sets down the fact that the name, "George Meade," 5282, written near the northeast line of the tract, did mean an adjoinder.  So, on all his separate drafts he sets down in his certificates one of the names thus marked, as, for instance, "Jonathan Mifflin," as an adjoinder.  If, then, one of these names so placed in the margin of the draft is, beyond controversy, to be taken as an adjoinder, we certainly cannot hesitate as to the others which are marked in precisely the same manner.  But no such explanation is necessary to fix the meaning of words so placed; they are part and parcel of the survey, and as infallibly indicate adjoinders and the adoption of the lines of such adjoinders, as do the calls for trees and other objects indicate corners and the courses of lines on the ground.  The doctrine here stated is settled in point• in Younkin *v.* Cowan, 10 Casey, 198, but an attempt is made to break the conclusive force of this case by the argument that the warrant was descriptive.  But a warrant of this kind is located, not by the survey, but by its calls, and one that cannot be so fixed on the ground is not descriptive.  In the case cited, however, the location was by survey, and upon its calls the question turned.  But admitting that the warrant was as claimed, that does not affect the fact that the names on the margin of the draft, "William Plunket," "Abraham Witmer" and "Martin Foutz," without more were recognized as calls for adjoinders and controlled the survey, and this though no mention of either of them was made in the deputy's certificate.  This same doctrine is recognized by Mr. Justice WOODWARD, in the case of Quinn *v.* Heart, 7 Wr., 337, as any one can discover by reading the opinion.

The fact is, what is here stated never was and never would have been doubted but for the dictum found in Ormsby *v.* Ihmsen, 10 Ca., 462, in which case the learned justice who delivered the opinion fell into the error of supposing that, after twenty-one years, an absolute presumption was raised that the lines of a survey were run on the ground as described in the official draft.  That a position of this kind must be regarded as radically wrong is obvious from the fact that it makes the official courses and distances control not only the calls, but also the lines that may be found on the ground.  For the purpose of quieting titles and settling disputes that must otherwise inevitably arise from chamber surveys, a presump-

tion such as stated is raised in favor of their location on the ground. But that presumption goes no further, for they must have, after all, actual and not merely presumptive calls, so that their location can be certainly fixed, otherwise they are good for nothing.

But even this case does not help the ruling of the court below in the case in hand, for there the lines of the call were run at an angle with the line of the official draft, and there was a call for a black oak at the one end of that line. Here, on the contrary, there is no call for a corner, and the line on the Mifflin block is identical, as to direction, with that of the Meade surveys. Now we of course agree that the effect of the call may be rebutted by such facts and circumstances as tend to show that the surveyor did not intend to limit his survey by its calls, or what otherwise might be taken as calls, as in Henry v. Henry, 5 Barr, 249, where it is held that lines and marks found upon the ground will rebut the presumption of an intention on part of the artist to adopt the line of an adjoinder; so in Kelly v. Graham, 9 Watts, 116, and Wharton v. Garvin, 10 Ca., 340, where the surveyor indicated his intention by leaving a vacant space between his closing line and the calls marked on the margin of his draft. In such cases the design becomes obvious from the unambiguous act of the artist. So would it have been as to the subject of the present controversy had the deputy drawn on his maps the northwest line of the Mifflin block and the southeast line of the Meade surveys as distinct lines, leaving a vacancy between them; but as it is, they have but a single line in common, hence conjecture is excluded. And in this connection we may here observe that, had the surveyor adopted the Beech corner of 5282 as a corner of the Mifflin tract 5101, that would of itself have determined the northwest line of the Mifflin block; but as he did not do so, that fact strengthens the position of the plaintiff, for why he did not adopt that corner if he intended the line of the Mifflin block to be other than the Meade line is inconceivable. With the Redman survey the case is different, for as there is no call for an adjoiner on the northwest, the official distances must govern, and they must determine its length in that direction. As what we have said fully disposes of all the assignments of error, we need not refer to them *seriatim*.

The judgment is reversed and a new *venire* ordered.