[S. F. No. 5489.   Department One.—October 4, 1911.]

J. H. G. WEAVER et al., Respondents, v. THEODORE H. HOWATT, Appellant.

PUBLIC LANDS—OFFICIAL SURVEY—LOST MONUMENTS—LOCATION OF BOUNDARIES—PROPORTIONAL SUBDIVISION.—In a controversy involving the adjustment of the boundary lines of United States sections and sectional subdivisions, and in which the places where the original monuments were set cannot be located on the ground, and the objects referred to in the record of the official survey furnish no means of finding the actual location of the original lines or corners, it is proper to resort to the proportional method of subdivision.

ID.—FIELD-NOTES AND PLAT OF SURVEY—RE-ESTABLISHMENT OF LINES AS ORIGINALLY LOCATED.—Such method should not be followed where there are data in the maps and field-notes constituting the official survey, which, in connection with the evidence as to the present condition and position of the natural objects referred to therein, renders it possible to re-establish the actual position of the controverted lines as originally located.

ID.—MAP AND FIELD-NOTES PART OF DESCRIPTION IN PATENT.—The maps and field-notes of the survey, embodied in a United States patent to land, constitute a part of the description.

ID.—MONUMENTS CONTROL COURSES AND DISTANCES.—The monuments and natural objects referred to in such survey, so far as they can be located, are controlling, and usually prevail over courses and distances.

ID.—FIXING COMMON SECTIONAL CORNER—ERRORS IN FIELD-NOTES AND PLAT—APPROXIMATE POSITION AS DETERMINED BY FIELD-NOTES—PROPORTIONATE SUBDIVISION WHEN INAPPLICABLE.—In such a controversy, when it becomes necessary to fix the common corner of four adjoining sections, the monument of which has become lost, the court, notwithstanding errors in the field-notes and plat rendering

it impossible to locate the exact spot fixed by the official survey, is not justified in fixing the corner at a point determined by a theoretical subdivision of the common boundary line, if the field-notes and plat contain ample data to show that it was not fixed by the official survey at or near the place selected by the court. It is not the province of the court to determine where the corner should have been fixed, and, if the exact spot cannot be found, it must, if possible, decide from such data its approximate position.

ID.—PROPORTIONATE SUBDIVISION WHEN APPLICABLE—LOCATION WITHIN DEFINED LIMITS.—The proportional method of subdivision is to be used only when no other reasonable method is possible, and it must be so used that it does not contradict or conflict with the official data that are not impeached, and which, if not impeached, confine the actual position within certain limits. The application of the proportional method must, in that case, be also confined to the same limits.

ID.—DUTY OF COURT TO FIX CONTROVERTED POINT TO CONFORM TO NATURAL OBJECTS.—Under such circumstances, it is for the trial court, upon all the evidence, to fix the place where it will best accord with the natural objects described in the field-notes as being about it, and found to exist on the ground, and which is least inconsistent with the distances mentioned in the notes and plat.

ID.—DISTANCES MAY CONTROL UNDER CERTAIN CIRCUMSTANCES.—The circumstances may be such that distances control, especially where the natural objects do not definitely fix the place, but leave it to be fixed within certain limits.

APPEAL from a judgment of the Superior Court of Humboldt County. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

G. W. Hunter, and Denver Sevier, for Appellant.

E. W. Wilson, J. H. G. Weaver, and W. F. Clyborne, for Respondents.

SHAW, J.—This is an appeal from a judgment in favor of plaintiffs. It was taken less than sixty days after the judgment was rendered, and, consequently, the evidence is subject to review.

In form the action is to quiet title to land, but the sole object of the suit is to determine the location of the boundary line between the lands of plaintiffs and the lands of the defendant.

All the lands are situated in township two, south, range three, east, Humboldt base and meridian. The plaintiffs own the north half of the northeast quarter of section 11, and the northwest quarter of the northwest quarter of section 12. The latter adjoins the eastern end of the first tract. The defendant owns the southwest quarter of the southwest quarter of section 1 and the adjoining southeast quarter of the southeast quarter of section 2. The north line of sections 11 and 12 forms the north line of plaintiff's land. The same line, being also the south line of sections 1 and 2, forms the south line of the defendant's land. The location of this common boundary is the point in dispute. The location claimed by plaintiffs is, according to the findings of the court, several chains north of its position as claimed by the defendant. A tract ten chains wide, north and south, and about forty chains long, or the full extent of defendant's two tracts, east and west, comprises the disputed territory.

The location of this common section line was fixed by the official survey of the United States from whom both parties derive title. The court found that the monuments set by the United States surveyors at the common corner of sections 1, 2, 11, and 12, to show the position of this line, have disappeared and that the original location thereof could not be ascertained. The same finding was made as to the quarter section corners on the line dividing sections 1 and 12 from sections 2 and 11. The north common corner of sections 1 and 2 and the south common corner of sections 11 and 12, were accurately ascertained and located by the government monuments there set. No attempt was made to locate the position of the east and west line in question by reference to monuments set elsewhere thereon, as, for instance, at the northeast corner of section 12 on the range line, or at the northwest corner of section 11. It was apparently agreed that those corners could not be found. The court found, in effect, that the north and south line actually run by the government surveyors between the common corner of sections 11, 12, 13, and 14, and the common corner of sections 1, 2, 35, and 36, cannot be retraced, found, or located on the ground by any of the monuments set thereon, or by any of the natural objects mentioned in the field-notes, and that the distances therein given between the natural objects mentioned are not accurate. Having decided

that it was impossible to find the actual position of the monument set at the common corner of sections 1, 2, 11, and 12, or the positions of the monuments set at the quarter section corners on this north and south section line, the court concluded that they were "lost corners" and that it must remeasure the whole line, divide it into four equal parts and set monuments accordingly without regard to the government survey. This was done and the portions falling to plaintiffs and defendant, respectively, by this method, were adjudged to them, the result being to take from defendant a large part of the land he claims.

The propriety of this mode of adjusting boundary lines of United States sections and sectional subdivisions, in a case where the places where the original monuments were set cannot be located on the ground, and the objects referred to in the record of the official survey furnish no means of finding the actual location of the original lines or corners, is not seriously disputed. The defendant's claim is that this is not such a case and that there were data in the notes and maps from which the court could and should have found and declared the actual position or location of the line in controversy. If this is true, of course the rule for re-establishing lost corners or lines does not apply. (*Yolo Co.* v. *Nolan,* 144 Cal. 448, [77 Pac. 1006].) The decision of the case therefore depends on the question whether from the records of the official survey, that is the maps and field-notes, and the evidence as to the present conditions and positions of natural objects, the position of the line can be lawfully located and should be fixed at a point more favorable to defendant. The maps and field-notes constitute parts of the descriptions in the original patents. (*Foss* v. *Johnstone,* 158 Cal. 128, [110 Pac. 294], and cases cited.) These monuments and objects, so far as they can be located, are controlling and usually prevail over courses and distances. (Code Civ. Proc., sec. 2077; *Kimball* v. *McKee,* 149 Cal. 450, [86 Pac. 1089].)

The following map shows appproximately the outlines and relative positions of the tracts and some of the important markings as shown on the map returned with the government survey:

The dotted lines are not shown on the government map.

The line upon which the chief dispute arises is the line from A to B on the map, and dividing sections 1 and 12 from sections 2 and 11. The section lines of the official survey were run by S. W. Foreman in July, 1875. In running the aforesaid line A, B, he began at the south common corner of sections 11 and 12 and ran north to the township line. The following is a copy of his field-notes of the survey of that line.

"North bet. secs. 11, 12, Var. 18° 30′ E.

40.00—Old ¼ sec. post 4 ft. long and 4 in. dia., 4 in. stone mound made mound 4½ ft. at base and 2 ft. high for ¼ sec. cor. No trees near. Brushy.

55.00　Begin steep descent.

80.00　Old sec. cor. post 4 ft. long and 4 in. square and made mound 4½ ft. at base and 2 ft. high, with pits 18x18x12 in. for the cor. to secs. 1, 2, 11, 12.

　　　　No trees near.

　　　　Land hilly, N. W. slope.

　　　　Soil 2d rate.

　　　　Timber fir, oak, redwood & Madrone.

Brush some and chaparral.

North on a random line bet. secs. 1, 2, Va. 18° 30′ E.

11.85  A creek 20 lks. wide runs N. W.

13.00  Enter bottom land bears E. & W.

20.60  To a point 10 links E. of old meander post on left bank of Eel River bet. secs. 1, 2, from which post I run a base West 300 lks. to a point from which the old meander post on right bank of Eel River on line bet. secs. 1, 2 bears N. 19¼° E. which gives 8.59 chs. for the distance across the river, to which add 20.60 chs. the distance S. of river gives.

29.19  To a point 10 lks. E. of old meander post on right bank of river.

40.00  Set temporary ¼ sec. cor.

80.50  Intersect the N. Bdy. of Tp. 40 lks. E. of the cor. to secs. 1, 2, 35, 36, which cor. agrees with the notes furnished by the office and from which I run S. 17° E. on a true line bet. secs. 1, 2.

40.50  Set a ¼ sec. post 4 ft. long and 4 in. dia. in old stone mound made 4½ ft. at base and 2 ft. high.
No trees near.

51.31  Old meander post 4 ft. long and 4 in. dia. in a mound 4 ft. at base and 2 ft. high with pits 18x18x12 in. and from which old bearing tree an alder 10 in. diam. bears N. 18° W. 86 lks. dist.

59.90  Old meander post on left bank of Eel River on line bet. secs. 1, 2, with mound and pits.

80.50  The cor. to secs. 1, 2, 11, 12.
Land broken, hill slopes N. & S. to River.
Soil 2d & 3d rate.
Timber, oaks, fir, redwood and madrone."

The distances given in these notes as those at which the natural objects were reached are all found to be inaccurate. The total length of the line was not 160.50 chains. It was only 151.01 chains, or 9.49 chains short. The distance from the south end, the common corner of sections 11, 12, 13, and 14, to the place marked "begin steep descent," was not 55 chains. It was 56.10 chains. The place marked "enter bottom land" was not a total distance of 93 chains from this corner. It was only 65.42 chains, as the court found, a difference of 27.58 chains. The total distance to the south bank of Eel River

was 88.35 chains, not 100.60 chains, as the notes make it; a difference of 12.25 chains. To the north bank of Eel River it was 97.37, not 109.19; a difference of 11.82 chains. From the north boundary of the township south to the north bank of the river was not 51.31 chains, but was 53.64 chains, or 2.33 chains longer.

The creek shown on the official plat as crossing the south line of section 12 east of the southwest corner and running northerly through the west half of the section and thence into section one and through the defendant's land to Eel River, does not exist as delineated. It could not run along the slope between the point where the steep descent begins and the bottom land, as the notes would have it. The actual course of the creek that crosses the south line of section 12 is shown on the map attached hereto by the dotted line crossing the west line of section 12 at the place marked "C," a point only 41.60 chains north of the south common corner of sections 11 and 12, and according to the official measure, 50.25 chains south of the place referred to in the field-notes by the words "11.85. A creek 20 lks. wide runs N. W." It is also south of the "steep descent" mentioned in the notes at 55 chains. No such creek as this is mentioned in the field-notes of the survey of this line. On the notes of the survey of the south line of section 12, Sonoma Creek is mentioned as crossing the line 6.50 chains east of the southwest corner. The government surveyor does not make these official plats. They are prepared in the general land-office at Washington. (U. S. Rev. Stats., sec. 2395, [U. S. Comp. Stats. 1901, p. 1471].) It is suggested as a possible explanation, that the draughtsman supposed that the "creek" noted as crossing the line between sections 1 and 2 was the same creek as Sonoma Creek crossing the south line of section 12 and delineated it on the plat accordingly. It is clear from the evidence, at all events, that the call for a creek in the field-notes on the line of sections 1 and 2, is a false call and that it should be rejected as a means of locating the division line in question.

The effect of the judgment of the court dividing the common line of the four sections arbitrarily into four equal parts, regardless of the natural objects referred to in the field-notes, is to place the section corner, locating the line dividing plaintiffs' land from that of the defendant, at a point in the "bottom

land" noted on the plat, 13.09 chains south of Eel River and in the midst of a thick forest of large redwood trees.

We do not think the evidence justifies such wholesale disregard of the official survey. While it is true that the errors in the field-notes and plat make it impossible to locate the exact spot fixed by the official survey as the common corner of sections 1, 2, 11 and 12, in the absence of the monument set to mark it, yet there.is ample evidence to show that it was not fixed at or near the place selected by the court, upon its theoretical subdivision of the line. It is not the province of the court to determine where the corner should have been fixed. This is not an action to vacate the government survey. It must be assumed that the line was measured and the monuments set. Their positions, as set, fix the rights of the parties, regardless of the inaccuracy of the measurements and the errors in distance found in the field-notes. The trial court must ascertain, as near as may be, where this monument was set by the government surveyor. If the exact spot cannot be found, it must, if possible, decide from the data appearing in evidence its approximate position, and the proportional method is to be used only when no other reasonable method is possible and it must be so used that it does not contradict or conflict with the official data that are not impeached, and which, when not impeached, confine the actual position within certain limits. The application of the proportional method must, in that case, be also confined to the same limits.

The country between the corner of sections 11, 12, 13, and 14 and the place of "steep descent," and also between Eel River and the north township boundary is very hilly and rough. It is stated in the evidence, without contradiction, that the discrepancies in distance between the official survey and the private survey, between these points, 1.10 chains in the first instance and 2.33 chains in the other, is not an unusual difference between successive surveys over such ground. The distance to the place where the steep descent begins was therefore stated in the field-notes with substantial accuracy. The field-notes state that at the common corner there are no trees near, that the soil.there is second or third rate, that the land is hilly, that it is on a northwest slope, and that what timber there is near consists of fir, oak, redwood, madrone, and brush or chaparral. They also show that the government surveyor

in his progress north arrived at the corner post and monument before he entered the "bottom land." The distance given is apparently wrong, but the natural object, the bottom land, is there and the field-notes describe it as having been encountered after passing north of that corner. The court fixed the corner not on the slope before reaching the bottom land, nor where the land is hilly, but nearly ten chains into the bottom land, and on practically level land; not in the second-, or third-rate soil, but on first class rich soil; not where the timber is fir, oak, redwood, madrone, brush, and chaparral, as is the case on the slope, but in the midst of a thick forest which is all redwood. It is obvious from these facts that the original corner is not near the place fixed by the judgment. Furthermore, the field-notes show that the line between sections 1 and 2 was established by surveying two lines: 1. A random line run north to the township line at a point 10 links, or less than 7 feet, east of the old township monument set as the section corner; and 2. By a true line run south from that monument to the south section corner stated to be 20.60 chains south of Eel River. The true line was, of course, the line officially established. The notes of this survey of the true line show that the surveyor again found the meander posts on Eel River at the same distance from the township line as before and again found the south section corner, here involved, at the same distance from the river as before, and again noted that it was situated on hilly land, on a slope, in second- and third-rate soil, that the timber about it was oak, fir, redwood, and madrone, and that it was 20.60 chains south of Eel River.

These natural objects and conditions still exist and they are all found a considerable distance south of and not at the place in the redwood forest selected by the court. They indubitably show that the court's location is wrong and that the true corner must be located farther south, where it is not in a redwood forest, nor in first rate soil nor in distinctly "bottom land." The distance of 20.60 from the corner to the river may be incorrect. Under the rule established, it must give way, as evidence of location, to the natural objects mentioned in the field-notes as descriptive of the true location, so far as the two conflict. They do describe the actual location with some certainty and within ascertainable limits. The false calls and inaccurate measurements being rejected, those objects referred

to which are found to exist must control, so far as they point
to or circumscribe the location. The case is, in this respect,
very like *Chapman* v. *Polack,* 70 Cal. 487, [11 Pac. 764],
where a similar conclusion was reached. We cannot determine
the place. It is for the trial court, upon all the evidence, to
fix the place at a point where it will best accord with the
natural objects described in the field-notes as being about it,
and found to exist on the ground, and which is least incon-
sistent with the distances mentioned in the notes and plat. It
may be, that, under all the circumstances, the distance of 20.60
chains, measured from the south bank of Eel River, and noted
on the plat, affords the most reliable means of ascertaining
the approximate position, but as upon a new trial there may
be different evidence, we lay down no rule to that effect.
Circumstances may be such that distances control, especially
where the natural objects do not definitely fix the place, but
leave it to be fixed within certain limits. (*Kimball* v. *Mc-
Kee,* 149 Cal. 450, [86 Pac. 1089]; Code Civ. Proc., sec.
2077.) Other cases supporting our conclusion are *Wise* v.
*Burton,* 73 Cal. 170, [14 Pac. 678]; *Whiting* v. *Gardner,* 80
Cal. 80, [22 Pac. 71]; *Tognazzini* v. *Morganti,* 84 Cal. 161,
[23 Pac. 1085]; *Yolo Co.* v. *Nolan,* 144 Cal. 449, [77 Pac.
1006]; *Los Angeles etc. Co.* v. *Thompson,* 117 Cal. 602, [49
Pac. 714]; *Galbraith* v. *Shasta I. Co.,* 143 Cal. 96, [76 Pac.
901].

The judgment is reversed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing
in Bank.