[S. F. No. 6505.   Department One.—November 5, 1915.]

## J. H. G. WEAVER, and W. F. CLYBORNE, Appellants, v. THEODORE H. HOWATT, Respondent.

ACTION TO QUIET TITLE—UNITED STATES GOVERNMENT SURVEY—LOST
MONUMENT—PROPORTIONAL METHOD OF LOCATING LOST CORNER—
FIELD-NOTES REFERRING TO NATURAL OBJECTS.—In an action to quiet
title in which the question at issue is the location of the common
corner of four adjacent sections under the United States government
survey, the artificial monument being lost, it is error for the court
to set aside the survey for the reason that it was never in fact made
upon the ground, and to introduce the proportional method of locat-
ing the common corner as a lost corner, where the field-notes refer
to certain natural objects which can be found along the line men-
tioned.

ID.—LOST CORNER—PURPORTED SURVEY NOT MADE.—A lost corner is not
established by showing that the survey purported to be made was
never in fact made.

ID.—COLLATERAL ATTACK.—A survey made by the proper officials of the
United States, confirmed by the Land Department, is not open to
collateral attack in the courts in an action by private parties.

ID.—OBLITERATION OF MONUMENT—REFERENCE TO NATURAL OBJECTS.—
The obliteration of a monument made in the survey does not destroy
such survey nor justify the court in disregarding it where enough
data remain to locate the place occupied by the monument by refer-
ence to the natural objects referred to in the survey.

ID.—INACCURATE DISTANCES—FAILURE TO NOTE NATURAL OBJECTS—
METHOD OF LOCATING POINT MARKED BY LOST MONUMENT.—Where
there are inaccuracies in the distances given in the field-notes and
errors in topography and failure to note natural objects on the part
of the surveyor, it is the duty of the court to fix the corner under
such circumstances at a point where it will best agree with the nat-
ural objects described in the field-notes and found to exist on the
ground at a point which is least inconsistent with the distances
mentioned in the notes and plat.

ID.—LOCATIVE CALLS—INCIDENTAL CALLS—ERRONEOUS COURSES AND DIS-
TANCES TO GIVE WAY TO NATURAL OBJECTS.—Where locative calls
have all disappeared or cannot be identified and there are no means
other than incidental calls of ascertaining a locative monument for
a corner placed by the surveyor, incidental calls may be resorted
to to locate the corner, and where the courses and distances are
manifestly erroneous and the locative monument is gone, such dis-
tances should give way to natural objects noted and found upon
the ground at approximately the distances given in the notes, even
if the calls for such natural objects are incidental and not "locative."

APPEAL from a judgment of the Superior Court of Humboldt County. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

E. W. Wilson, J. H. G. Weaver, and W. F. Clyborne, for Appellants.

G. W. Hunter, and Denver Sevier, for Respondent.

SHAW, J.—The appeal is from the judgment. The record consists of the judgment-roll alone. The case was before this court upon a former appeal from a judgment rendered in the first trial of the cause, that judgment being in favor of plaintiffs. The judgment was reversed in pursuance of an opinion reported in 161 Cal. 77 [118 Pac. 519]. The present appeal is from the judgment rendered for the defendant upon the second trial of the cause.

The action is in form a suit to quiet title, but, in effect, the only question is the location of the common boundary between the parties. The plaintiffs own lands in sections 11 and 12 in township 2 south, range 3 east, Humboldt meridian, said lands lying adjoining and along the north lines of said sections. The defendant owns land in sections 1 and 2, lying immediately north of plaintiffs' land. The common boundary line of sections 1 and 2, and 11 and 12, divides the plaintiffs' land from that of the defendant, and its location is the subject of the controversy. The location of the common corner of the four sections determines the location of this line. The former opinion contains a copy of the map of the government survey of the four sections. It also sets forth the field-notes of the survey so far as material to the question at hand. We refer to that opinion for a more detailed statement of the facts in the case. On the first trial the court had decided that the corner in dispute was a lost corner and had established it by the proportional method, that is, at a point equally distant between the north lines of sections 1 and 2, and the south lines of sections 11 and 12, without regard to the natural objects designated upon the map and field-notes of the government survey. The opinion held that this was erroneous and that the map and field-notes, coupled with the evidence concerning the position of some of the natural objects referred to therein, were sufficient to take the case out of the

rule concerning lost corners, and to require the location of the disputed corner within certain approximate limits between the natural objects found upon the ground and described in the map and field-notes. On this subject we said in conclusion:

"It is for the trial court, upon all the evidence, to fix the place at a point where it will best accord with the natural objects described in the field-notes as being about it, and found to exist on the ground, and which is least inconsistent with the distances mentioned in the notes and plat. It may be that, under all the circumstances, the distance of 20.60 chains, measured from the south bank of Eel River, and noted on the plat, affords the most reliable means of ascertaining the approximate position, but as upon a new trial there may be different evidence, we lay down no rule to that effect. Circumstances may be such that distances control, especially where the natural objects do not definitely fix the place, but leave it to be fixed within certain limits." (161 Cal. 86, [118 Pac. 519, 522].)

Upon the second trial the court, following these directions, ascertained that the places noted on the field-notes as "steep descent," "enter bottom land," and as the south or left bank of Eel River, were easily located on the ground, and that the distances given in the field-notes from the south end of the line to the steep descent and from the north end of the line to the south bank of Eel River were approximately correct. The field-notes and map show beyond question that the monument set at the corner in dispute was placed by Foreman, the government surveyor, at a point somewhere between the place of steep descent and the place where the bottom land was entered. Upon these facts and the other circumstances stated in the findings the court located the corner at a point on the line which, according to its own measurement, is distant 64.27 chains north of the south common corner of sections 11 and 12, and 86.42 chains south of the north common corner of sections 1 and 2.

The appellants rely chiefly upon the proposition that the section lines in question were never surveyed at all, and, consequently, since the post said to have been set at the corner by the government surveyor cannot be found, that all the calls for natural objects along the line mentioned in the field-notes and map must be wholly disregarded, and the corner must be

treated as a lost corner, ascertainable only by the propor-
tional method. In support of this position they rely upon
finding number 28, which is as follows:

"That the line between the corner common to sections 11,
12, 13, and 14, and the corner common to sections 1, 2, 35,
and 36 on the north boundary of the township, was never
actually run upon the ground, and the corner common to sec-
tions 1, 2, 11, and 12 was never actually set and established
on the ground. This finding is based upon all the facts as
found in the preceding findings. No person who participated
in the official survey was a witness."

This proposition of the plaintiff and this finding of the
court are based upon the theory that in an action between
patentees of adjoining property the government survey under
which both claim, showing the boundary between them, may
be impeached by evidence that the line was not run upon the
ground as returned by the surveyor. It is to be admitted, of
course, that where no marks or objects can be found upon
the ground corresponding to those referred to in the sur-
veyor's return, the rule of lost corners prevails and the corner
can only be located by the proportional method. But this
does not justify the proposition that the government corner
can be placed in the category of a lost corner by proof that
the survey purporting to have been made was never made
in fact. It is a well-settled proposition that in an action of
this character the court has no power to set aside the survey,
or to overthrow it by evidence tending to show that it was
never made. In *Chapman* v. *Polack,* 70 Cal. 492, [11 Pac.
764], the question at issue was the location of the division
line between the northeast and the southeast quarters of the
section. The plat returned with the government survey had
noted that the Geyser Hotel was north of the line and in the
northeast quarter of the section. The findings in the case
stated that the Geyser Hotel was in fact situated upon the
southeast quarter of the section, and the court accordingly
gave judgment for the possession thereof in favor of the
owner of the southeast quarter. The court thereupon said:

"Under the circumstances, the question arises, Can parol
testimony and private surveys be received to show that the
line laid down upon the approved official plat of the town-
ship, under which and with reference to which the parties
purchased, is erroneous and that the defendant's hotel, the

mouth of Devil's Cañon, and Pluton Creek are all not in the northeast quarter, but in the southeast quarter of the section, and that the line should run north of the hotel and creek, as shown upon the plat of Von Leicht, a witness for the plaintiff.''

Answering its own question the court held that:

''The line as designated upon the plat, and running south of defendant's hotel, whether accurate or not, is to be deemed and taken as the true division line between the north and southeast quarters of section 13, and that neither a private survey nor parol evidence was admissible to show that the line should in fact run north of defendant's hotel.'' This decision is approved in *Whiting* v. *Gardner*, 80 Cal. 78, 80, [22 Pac. 71]. In *Los Angeles etc. Co.* v. *Thompson*, 117 Cal. 601, [49 Pac. 714], the court held that the parties to a suit involving the location of lines established by a government survey could not show that there had been no actual survey upon the ground of the tract described in the patent. In *Brown* v. *Yarraham etc. Co.*, 3 Cal. App. 476, [86 Pac. 744], the court held that in locating a line purporting to be established by a government survey it could not be assumed that the line was not run upon the ground as the report of the surveyor purported to declare.

Referring to this subject we said in the former opinion:

''This is not an action to vacate the government survey. It must be assumed that the line was measured and the monuments set. Their positions, as set, fixed the rights of the parties, regardless of the inaccuracy of measurements and errors in distance found in the field-notes. The trial court must ascertain, as near as may be, where this monument was set by the government surveyor.''

The proposition that a survey cannot be thus impeached is thoroughly established. In *Cragin* v. *Powell*, 128 U. S. 697, [32 L. Ed. 566, 9 Sup. Ct. Rep. 203], the court declares that whether an official survey is erroneous or should give way to corrections from subsequent measurements ''is a question which was not within the province of the court below, nor is it the province of this court to consider and determine.'' In *Russell* v. *Maxwell*, 158 U. S. 256, [39 L. Ed. 971, 15 Sup. Ct. Rep. 827), the court said: ''A survey made by the proper officials of the United States, and confirmed by the land department is not open to challenge by any collateral attack

in the courts." In *Whitaker* v. *McBride,* 197 U. S. 512, [49 L. Ed. 857, 25 Sup. Ct. Rep. 530], the principle was stated thus: "The official surveys made by the government are not open to collateral attack in an action at law between private parties." Other cases to the same effect are *Bellas* v. *Levan,* 4 Watts (Pa.), 294; *Salmon* v. *Dusenbury,* 110 Pa. 452, [1 Atl. 635]; *Grier* v. *Pennsylvania C. Co.,* 128 Pa. 99, [18 Atl. 480]; *Cain* v. *Flynn,* 34 Ky. (4 Dana), 501; *Little* v. *Williams,* 88 Ark. 37, [113 S. W. 340]; *Murphy* v. *Tanner,* 176 Fed. 537, [100 C. C. A. 125].

It follows from these authorities that the finding of the court above quoted was upon a question which it was not competent for the court to determine. The court below in effect came to this conclusion, and wholly disregarded this finding in the conclusions of law and judgment.

The appellants also argue that because of the many discrepancies between the distances given in the field-notes and the distances as found by the court, and because of other errors in topography and failures to note natural objects, made by the surveyor, the court should have entirely disregarded the natural objects which were correctly noted by the surveyor, and which approximately locate the corner in dispute. The former opinion is against this proposition, and of course it settles the question. The foregoing authorities also demonstrate that the argument is without force. The court is bound to assume that the line was run on the ground and that the post was set in a mound of stones at a place fixed for the common corner of the four sections as the field-notes show. All trace of that monument has disappeared, and the exact place where it was erected cannot now be identified. But under the above rules these circumstances do not destroy the survey nor justify the court in disregarding it, when enough can be ascertained therefrom and identified on the ground to approximately locate the corner. Even if the surveyor had merely walked over the line and measured the distances by counting his steps, or by guess, the government accepted his report as satisfactory evidence of the location of the subdivisions, and enough now remains capable of identification therefrom on the ground to inform the court that he placed the monument for a corner somewhere north of the identified place of "steep descent" and somewhere south

of the identified "bottom land," and that it was not placed in the dense redwood forest in the middle of the bottom land, as the appellant here contends. The bottom land is noted on the official map, as well as in the field-notes, as situated north of the common corner and well within sections 1 and 2. The court, under the above authorities, and in obedience to the former decision of this court, could not do otherwise than as it did, that is, fix the corner "at a point where it will best agree with the natural objects described in the field-notes as being about it, and found to exist on the ground and which is least inconsistent with the distances mentioned in the notes and plat." We cannot say from the facts properly found that it has not done this.

The appellants contend that the references in the field-notes and map to the natural objects, by which the site of the corner is now determined, are mere "incidental" calls and not "locative" calls, and hence that they should yield to distances. It is true that they are incidental calls. But incidental calls may be resorted to for the purpose of ascertaining a located corner where the locative calls have all disappeared, or cannot be identified, and there are no means, other than the incidental calls, of ascertaining the place where the locative monument for the corner was placed by the surveyor. They may or may not be allowed to prevail over the courses and distances according to the circumstance of the particular case; but in a case like this, where the locative monument is gone and the place incapable of identification, where the distances noted in the survey as locative of the corner are manifestly erroneous, such distances should give way to the natural objects noted and found upon the ground at approximately the distances given in the notes, even if the calls for such natural objects are incidental and not "locative."

It may well be, as appellants say, that this location of the corner will set all awry the shapes of the sections and subdivisions affected thereby. This is, unfortunately, a not infrequent result of inaccurate, careless, or fraudulent surveys. But the government owned the land, caused the survey to be made, and sold the land by reference thereto. Purchasers must abide by the result regardless of the lack of rectangular form or regular shape of the subdivisions so made. (*Chap-*

*man* v. *Polack,* 70 Cal. 492, [11 Pac. 764].)   We find no cause
for setting aside the decision of the court below.

The judgment is affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.