WARD HARRIS, APPELLEE, v. DIRK E. HARMS, APPELLANT.

FILED DECEMBER 23, 1920.   No. 21083.

1. **Boundaries: LOCATION: EVIDENCE: BURDEN OF PROOF.** "Government corners fixed by a United States surveyor at the time of the original survey will control the field notes of the survey taken at the time the corner was erected and will control the field notes or courses and distances of any subsequent survey. Such corner, if identified by the proofs, is the best evidence of where the line should be. But in the absence of such corner, or of satisfactory proof of its location, the field notes of the survey will govern and determine the true line, and such field notes and government plats in such case are *prima facie* evidence of its true location, and the burden is then shifted to the party who wishes to establish the corner at a place different from that called for by the field notes and government plat of the original survey." *Knoll v. Randolph*, 3 Neb. (Unof.) 599.

2. **Instructions** set out in the opinion *held* free from error.

3. **Evidence** *held* sufficient to support the verdict of the jury.

APPEAL from the district court for Keith county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*George B. Hastings* and *B. F. Hastings*, for appellant.

*H. A. Dano, L. A. DeVoe* and *W. T. Wilcox*, contra.

*W. T. Thompson* and *J. J. Halligan*, amici curiæ.

MORRISSEY, C. J.

This is an action in ejectment brought by plaintiff against defendant to recover possession of a strip of land

617 feet wide and 2,640 feet in length along the boundary line between the southeast quarter and the northeast quarter of section 32, in township 14 north, of range 40 west of the sixth principal meridian, in Keith county. There was a verdict and judgment for plaintiff, and defendant appeals.

Plaintiff is the owner of the southeast quarter of section 32 and defendant is the owner of the northeast quarter of that section. Each is holding under a patent duly issued by the department of the interior, and the dispute between them is not a dispute as to titles, but as to the location of the dividing line.

Prior to the institution of this litigation there had been disputes as to the interior boundary lines in township 14, range 40, and, in conformity with statutory provisions, a resurvey of the lines within the township had been made by the deputy state surveyor. Plaintiff claims his land according to the survey thus made. Defendant disputes the accuracy and legality of this survey, and also claims possession for more than ten years next preceding the institution of the suit. The correctness of instruction No. 6, given by the court on its motion, is challenged by appellant. This instruction reads as follows:

"The jury are instructed, as a matter of law, that government corners fixed by a United States surveyor at the time of the original survey will control the field notes of the survey taken at the time the corner was erected and will control the field notes or courses and distances of any subsequent survey.

"Such corner, if identified by proofs, is the best evidence of where the line should be. But in the absence of such corner, or satisfactory proof of its location, the field notes will govern and determine the true line, and such field notes and government plats in such case are *prima facie* evidence of its true location.

"If the monuments erected by the government surveyor have been obliterated, and no witness can fix their original location, and the government field notes returned to

the surveyor general show that section lines were established on straight lines between the township corners and determine their location by courses and distances, the field notes should be accepted as presumptively correct, and should only be overcome by clear and satisfactory evidence that the surveyor established the corners at other points.

"You are further instructed, as a matter of law, that, in determining the boundaries of land, fixed monuments and known corners govern both courses and distances; and where the existence of the original government corner is established at a certain point by sufficient evidence, its authenticity cannot be overcome by showing that the location is not at the distance from other monuments indicated by the field notes of the original survey.

"Where land has been surveyed and corners located by or under the direction of the federal government, all persons are bound to observe such survey and corners where the same can be ascertained, even though mistakes may have been made by the government surveyors in the location of corners.

"Where, however, no corners were located by the government surveyors, or where it is impossible to ascertain with any degree of certainty the point where the government surveyor has located the corner, then the county surveyor has a right to locate the corner, and, in case of a quarter corner, it would be his duty to fix the corner midway between the known section corners of the section."

Appellant complains of the several paragraphs of this instruction. The instruction must be read as a whole. As we understand appellant's assignments, his main criticism relates to the second paragraph of the instruction, where the jury are told, in substance, that, in the absence of proof of the location of the corners established by the original government survey, the field notes of such survey will be taken to determine the true location, and such field notes with their accompanying maps are *prima facie*

evidence of its true location. The rule announced has long been followed in this state. *Knoll v. Randolph,* 3 Neb. (Unof.) 599; *State v. Ball,* 90 Neb. 307.

By instruction No. 7, which is criticised by appellant, the court referred to the state statute (Rev. St. 1913 sec. 5566), providing for resurveys: "In case of any dispute among owners of and arising for or by reason of any survey of boundaries of lands." It is claimed that there is no evidence to show that, prior to the making of the survey, there was dispute among the owners of the land in that township, and that by this instruction special prominence was given to the evidence of the deputy state surveyor who made the survey on which plaintiff relies. But this criticism is not well founded, as appellant's own pleading alleges that there was a dispute over the line as early as 1907.

Appellant urges that there was error in giving instruction No. 8, which reads:

"In this case if, from the evidence, you believe that the line between the said northeast quarter and the southeast quarter of section 32, as shown by the survey of the state surveyor, is as fixed by the original survey, or if, from the evidence, you believe that the government surveyor in surveying said township 14, range 40 west, did not establish the interior corners, but that the line, as established by the state surveyor, is approximately where it would have been had the government surveyor surveyed the interior of said township, and established corners, in accordance with and corresponding to the known lines and corners, established by the government surveyors on the outside boundary of said township 14, range 40 west, then you should return a verdict finding for the plaintiff.

"In other words, if, under the evidence, you believe that the surveyors in making the original government survey did not run the interior lines and establish the interior corners of said township 14 north, range 40 west, then you should find for the plaintiff in accordance with the lines and corners run and established by the state surveyor."

Appellant claims that by this instruction the court left to the jury the question: Did the government surveyors actually run the lines and establish corners on the ground? And it is claimed that this was an attempt to attack collaterally, in an action between private parties, the surveys of the United States. On the record presented it may be said to appear that the deputy state surveyor, after making a most thorough investigation, reached the conclusion that the pits were not dug, the mounds erected, nor the stake driven at each corner in accordance with the practices and usages of government surveyors, while the defendant contended that these things had been done.

We do not understand that the deputy state surveyor reached the conclusion that the government surveyor had not run the lines and actually made the field notes, because he appears to have relied upon the field notes in doing his work. The record appears to present one of two alternatives: The government surveyors did not actually erect the monuments at the section corners, or, if they did erect them, they have become wholly obliterated and lost. Under the instruction given, the jury were left free to adopt either alternative. The effect of appellant's argument would be to hold that, before a corner may be located by the state surveyor, it must first affirmatively appear that the corner once existed. This would defeat the very purpose of the statute allowing resurveys. To make proof of the former existence of a corner other than by the official plats and field notes is often impossible. The survey made by the deputy surveyor, under which plaintiff claims, corresponds substantially with the government field notes, and the instructions of the court in stating the effect to be given to this resurvey is supported by the evidence and in harmony with the provisions of the statute (Rev. St. 1913, sec. 5566). Appellant, however, contends that the rule runs counter to the holding in *Cragin v. Powell*, 128 U. S. 691. A careful reading of the opinion in that case discloses a state of facts materially different from the facts disclosed in the instant case, and it does not appear that

the court therein conclusively held that, where the government surveyor in running the lines failed to properly mark the section corners, another surveyor, duly authorized, in making a subsequent survey, might not locate the corners in keeping with the field notes on the same basis as though the monuments had been actually placed on the ground and later obliterated.

Appellant also cites the case of *Weaver v. Howatt*, 161 Cal. 77, 118 Pac. 519, and 171 Cal. 302, 152 Pac. 925. This case was twice before the supreme court of California. The first paragraph of the syllabus of the second opinion, as it appears in 152 Pac. 925, when read alone, appears to support the position of appellant; but, when the subsequent paragraphs of the syllabus and the whole opinion are read, the conclusion of the court does not seem to be in conflict with the rule herein announced.

Evidently the supreme court of California took the same view that we express, for the paragraph of the syallabus from the Pacific Reporter, quoted in the brief of appellant, is not found in the official state report.

Instruction No. 9, given by the court, is assailed as throwing the burden of proof upon the defendant. By this instruction the court told the jury that the survey made by the state surveyor was *prima facie* correct, and that the burden rested upon defendants to overcome the presumptive correctness of the survey. This instruction must be considered in connection with the other instructions given, together with the provisions of the statute (Rev. St. 1913, sec. 5566), and, when so considered, it appears to be a correct statement of the law applicable to the facts disclosed.

It is further argued that the verdict is not sustained by sufficient evidence. To set out the conflicting evidence found in the bill of exceptions will serve no useful purpose. It may be summarized by saying that the deputy state surveyor and a number of other witnesses testified to making an investigation in the township and to their inability to find the original monuments erected by the government surveyors, but they admitted finding what they denomi-

nated "locators' corners." They express the opinion that these "corners" were erected by land speculators and land agents, and that they differ in many essentials from the monuments erected by government surveyors. On the other hand, defendant, by a number of witnesses, undertook to show that these corners were recognized by the early settlers as the official monuments; that land was entered; that roads were laid out, and fences built, relying upon them, and that they have been recognized for a long term of years by parties residing within that township. Defendant also claimed to have inclosed the land in dispute with a fence and to have acquired title by adverse possession. All these disputed questions of fact were submitted to the jury and resolved in favor of the plaintiff. The finding of the jury is amply supported by the evidence, and the judgment is

AFFIRMED.