## BURCH v. UNITED STATES.

### No. 5985.

Circuit Court of Appeals, Ninth Circuit.

May 26, 1930.

Huston, Huston & Huston and Percy Napton, all of Woodland, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Albert E. Sheets, Asst. U. S. Atty., both of Sacramento, Cal. (H. P. Dechant, Asst. Sol. Department of Agriculture, of San Francisco, Cal., of counsel), for the United States.

Before DIETRICH and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

The United States, as owner of the public lands within Lassen National Forest, brought suit to enjoin the maintenance of a fence alleged to be located upon lands of the forest reserve, and which interfered with the construction of a certain road, authorized by the Secretary of Agriculture. From a decree in favor of the government, defendant appeals.

Appellant is the owner of lots 3 and 4 and S.½ of NW.¼ of section 1, township 30 north, range 7 east, Mount Diablo meridian, in Lassen county, Cal., according to the official plat of survey of said township. Section 2 of said township is within the reserve. Within lots 1 and 2 and the S.½ of the NE.¼ of said section 2 is located the greater portion of a mountain lake, named Silver Lake. Between the east shore line of this lake and the section line between sections 1 and 2, the road has been directed to be established. Appellant's land in section 1 is enclosed with fence, so constructed that a portion of Silver Lake is within the enclosure. It is the contention of the government that Silver Lake is wholly within the boundary lines of section 2, and that appellant's west line fence is within the latter section, and not on the township line, as appellant claims it to be.

The government rested its case on the official township plat and the field notes of the deputy surveyor. As delineated on the plat, no portion of Silver Lake is in section 1. The field notes of the deputy surveyor, in running the line between sections 1 and 2 northerly from the monument established as the corner common to sections 1, 2, 11, and 12, makes no mention of crossing any portion of the lake or intersecting its shore line. The only mention of the lake in the field notes made in running this division line is that, 23 chains north of the starting point—the said common corner—"a small lake bears West 3 chs. dist."

Appellant submitted testimony in support of his contention that the monument set by the deputy surveyor in the year 1882, establishing the north corner common to sections

1 and 2, had been obliterated and lost, but that, by locating the point from the field notes, appellant's fence was constructed on the dividing line as thus established by the deputy surveyor.

The north boundary of said sections 1 and 2, and of the township, is the sixth standard parallel. The field notes describe the "closing corner to secs. 1, 2," at the intersection with the standard parallel, as being at a point "21.15 chs. S. 87° 47' W. of corner to secs. 35, 36 T. 31 N." At this point the deputy surveyor, George Sandow, according to his field notes, set a "volcanic stone 15x14x8 ins.," upon which appropriate marks were placed to mark the corner.

Appellant relies on the testimony of a witness, Arthur Bradt, who testified, on behalf of defendant, that he had had experience as a surveyor and that he had re-established the location of the lost corner by a survey made by him in June, 1926. The witness claims to have re-established the lost corner, by what he refers to as the "proportionate distance" method, at a point "out in the lake about thirty-five links," or approximately twenty-eight feet. From this point, according to the witness, the dividing line between sections 1 and 2 "runs through the water there for a distance of two or three hundred feet." The witness located the lost corner twenty-one chains and fifty links westerly of the section corner common to sections 35 and 36 of township 31, instead of twenty-one chains and fifteen links, as stated in the field notes of the deputy surveyor, Sandow. This variance in distance would seem to account for the corner as being re-established by the witness some twenty-eight feet out in the lake. The witness prepared a map which was introduced in evidence, upon which is delineated the shore line of Silver Lake; the lost corner, as re-established by the witness, in the lake; deputy surveyor Sandow's supposed closing corner as being upon a random line run by him in resurveying the sixth standard parallel, and also the lines of a survey made by one Siebecker, in 1925, showing Siebecker's location of the parallel and the intersection therewith by the dividing line between sections 1 and 2. According to this map, the Siebecker survey fixed the line in question well to the east of the lake shore line. The Sandow line, as it appears on the Bradt map, is about half the distance between the line of the Siebecker survey and that of the witness Bradt. The field notes do not show that Sandow fixed the closing corner on the random line which he ran in connection with his resurvey of the sixth standard parallel, but upon that parallel. For some reason the witness, in drafting the map, also delineated a line parallel to the east line of section 1, starting from the common corner point of sections 1, 2, 11, and 12. This line intersects the lake still farther to the west of the line of the Bradt survey. The fact, however, is that the east and west lines of section 1 are not parallel, as shown by the official plat and field notes, there being a variation of 2° 50' in the courses of the two lines. The west line of section 1, as shown by the official plat of the township and the field notes, was run for its entire length upon a needle variation of 18° 21' east. The field notes show that Sandow established on this line, forty chains north of starting point, a quarter-section monument. This monument was found, but, in order for the Bradt closing corner to be a correct re-establishment of the lost Sandow corner, the line would have to proceed northerly upon a changed course which is not in accordance with the plat or field notes.

Appellant, as a witness in his own behalf, testified that when he purchased the land in section 1 from John Cooper, the original patentee, the latter informed him that the corner in question was "practically on an old road" and that he could find it by going "to the outlet of the lake and step ninety steps from the lake and at a big fir snag that stood there * * * that I could not miss it." Just where the outlet of the lake is does not appear from the evidence, but it is clear that the corner monument as described by Cooper was not within the lake shore line. Appellant further testified: "This stump I have testified to is practically right on the end of the neck of the lake. It would be east, northeast, out on the land and from Mr. Siebecker's corner practically to the end of the fence —practically north of it." Concerning the Siebecker survey and a portion of his fence lines, appellant testified: "It is on a line with Mr. Siebecker's survey and my lines correspond with his." The Siebecker survey appears in the case only by reference. It does not appear how he came to make the survey or for whom, but it is interesting at least to note that his location of lines and corners as they are delineated on the Bradt map appear to correspond in courses and distances very closely to the official township plat and the field notes of the deputy surveyor. At any event, it is clear that the Bradt line and closing corner are not correctly located.

There does not appear to be any discrepancy between the official plat and the field

notes. In endeavoring to determine the location of the lost corner, it does not appear that appellant's surveyor sought to retrace the west boundary of what corresponds to the NW.¼ of section 1 by starting at the quarter-section monument, which was located, and continuing from there northerly upon the course appearing upon the plat and in the field notes—variation 18° 20′ E—the distance therein indicated, which, if the field notes were correct, would be a point on the standard parallel 21.15 chains S. 87° 47′ W. of the corner of sections 35 and 36. There was no occasion to resort to the so-called proportionate distance method, unless a retracing of these lines established substantial error therein. Ayers v. Watson, 137 U. S. 584, 11 S. Ct. 201, 34 L. Ed. 803; Southern Development Co. v. Endersen (D. C.) 200 F. 272, 276; County of Yolo v. Nolan, 144 Cal. 445, 77 P. 1006; Somers v. McMordie, 155 Cal. xvi, 99 P. 482; Harris v. Harms, 105 Neb. 375, 181 N. W. 158.

The official plat and field notes of the deputy surveyor made out a prima facie case for the government, which is not shown to have been overcome by the evidence introduced upon the part of appellant.

Decree affirmed.