[S. F. No. 7282.   Department One.—November 22, 1917.]

# JOSHUA SPIERS, Respondent, v. ELIZABETH SPIERS et al., Appellants.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DENIAL OF MOTION—ABUSE OF DISCRETION.—In an action to quiet title tried by the court, where the findings and judgment against the defendants located a section corner on weak evidence, and in the face of substantial evidence to the contrary, the trial court abused its discretion in refusing a new trial on the ground of newly discovered evidence, consisting of the discovery, after the trial, of a monument which had been so concealed by a growth of bush as to absolve the defendants from the charge of lack of diligence in failing to discover it before the trial, and which would have supported the opposite conclusion.

PUBLIC LANDS—BOUNDARIES—DIVIDING LINE BETWEEN LOTS—HOW ASCERTAINED WHEN NOT FIXED BY GOVERNMENT SURVEY.—If a government survey of two adjoining equal subdivisions of a quarter-section fixed no mark or monument at the common corner, and the two corners of the quarter-section on that side are ascertained, the position of the common corner of the two subdivisions is to be fixed by dividing equally the distance between the quarter-section corners.

ID.—PROPORTIONAL METHOD OF LOCATING LOST CORNER.—The proportional method of locating a lost corner is to be used only when no other reasonable method is possible, and it must be so used that it does not contradict or conflict with unimpeached evidences of official surveys, which confine the actual position within certain limits.

ID.—CONFORMING TO FIELD-NOTES.—In such case, it is for the trial court, where, upon all the evidence it is reasonably possible to do so, to fix the place of the lost corner at a point where it will best accord with the natural objects described in the field-notes as being about it, and found to exist on the ground, and which is least inconsistent with the distances mentioned in the notes and plat.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—On a review of an order denying a new trial where a finding as to the location of a "lost corner" of a government section is based on the so-called "proportional method," and there is substantial evidence that the location so fixed does not conform to the calls of the field-notes and is not the true original location, and, after the trial, a government monument is discovered nearer to the lost corner than that taken by the court below in determining the position, and which, by the same method, would fix the lost corner more nearly in conformity with the calls of the field-notes relating to it, such discovery would be strong ground for a new trial.

Id.—Lost Corner—Proportional Method.—In applying the proportional method the nearest ascertainable corners or monuments on the line must be taken as the termini of the line to be proportionally divided.

APPEAL from a judgment of the Superior Court of Lake County, and from an order denying a new trial. M. S. Sayre, Judge.

The facts are stated in the opinion of the court.

H. B. Churchill, Charles Stewart, and J. E. Pemberton, for Appellants.

C. M. Crawford, and Lovett K. Fraser, for Respondent.

SHAW, J.—The defendants appeal from the judgment and from an order denying their motion for a new trial.

The complaint stated a cause of action to quiet title to a parcel of land described as lot 2, of section 5, township 11 north, range 7 west, in Lake County. The defendants are the owners of lot 1, adjoining lot 2 on the east. The only point in dispute is the location of the division line between the two parcels. The position of this line is controlled by the location of the northeast corner of section 5, which is also the northeast corner of lot 1. It does not appear that the corner at the intersection of the division line of the lots with the north line of section 5 was fixed and monumented by the government survey. The quarter-section corner, being the northwest corner of lot 2, was fixed, and the monument still remains. The position of the division line is to be fixed by ascertaining the location of the northeast corner of the section, and dividing the distance between that and the quarter-section corner. The parties differ solely with respect to the location of the said northeast corner of the section, it being also the northwest corner of section 4.

The plaintiff derives title to lot No. 2 from the United States, under a recent entry as a homestead claim. The defendants deraign title from the United States to lot 1, through Charles C. Copsey, who entered upon and obtained title thereto about the year 1877. Near the division line are situated certain mineral springs known as Copsey's Springs. Aside from these springs the land is of little value, and the

controversy arises from the claim of the plaintiff that the easterly line of lot 2 is only eight feet west of the main spring of said Copsey's Springs, and that several of the springs are included in lot 2; whereas the contention of the defendants is that said line is some two hundred feet westerly of said springs.

The court found that the monument set for the northeast corner of section 5 had been obliterated, so that its location could not be ascertained, and that the location thereof must be determined by what is known as the proportional method. The surveyors of the plaintiff testified that they found the corner monument at the northwest corner of lot 2, being the quarter-section corner on the north side of section 5, and then proceeded easterly on the section lines of sections 5 and 4, and were unable to discover or locate any government monuments of the section or quarter-section corners, until they reached the northeast corner of section 4; that thereupon they concluded that the common corner of sections 4 and 5 was to be treated as a "lost corner" and its location fixed by the proportional method. Accordingly they divided the distance between the known monuments into six equal parts, and located the section corner by measuring off four of these parts to the east and two to the west, between the section corner and the quarter-section corner of section 5. The court found in accordance with this survey and gave judgment accordingly. The effect was to fix the division line as above stated, eight feet west of the main Copsey Spring.

We have concluded that the court erred in refusing to grant the motion for a new trial for newly discovered evidence. This renders it unnecessary to consider the sufficiency of the evidence to sustain the findings of the court, except so far as its weakness may tend to explain our conclusion as to the necessity of a new trial. The field-notes of the government survey state that the monument was set at the northeast corner of section 5 "on top of ridge, bearing south thirty degrees east, and north thirty degrees west." The court fixed this corner in a depression easterly of the ridge and not on top thereof. The field-notes state that at a point two chains east of said corner the "trail from Copsey's Springs to Lower Lake bears north and south." The plaintiff's surveyors were unable to find this trail. The testimony in behalf of the defendants tended to show that it was discoverable, and that

by that mark the corner fixed by the court is too far to the east. Defendant's witnesses testified that they found a mound of stones near the top of the ridge, but a little farther west than they expected to find it, which they accepted as the section corner. The survey of sections 4 and 5 was made in 1876. The government survey of the sections immediately north, lying in township 12, was made in 1883 and 1884. The field-notes of that survey state that the monument set for the northeast corner of section 5, by the previous survey, was discovered. There was an offset of twelve chains between the section corners of township 12 and those of township 11, in which this land is situated. The field-notes of township 12 state that the section corner between sections 32 and 33, on the township line was 12.05 chains west of the said monument for the northeast corner of section 5, and that the surveyor found the post set in said monument and destroyed that part of the mark thereon relating to township 12. There was evidence to the effect that the monument set for the corner between sections 32 and 33 was found, and that it was situated 12 chains west of the mound of stones which defendants claim to be the northeast corner of section 5. There was also testimony that Copsey, who was in possession of lot 1 for many years under his government title, had claimed that his northeast corner was on top of the ridge aforesaid, and that the western line of lot 1 was on the hillside west of the springs, and several hundred feet away. Copsey's Springs were discovered by C. C. Copsey prior to the government survey in 1876, and at that time he was in possession thereof and was conducting a health resort thereon. Shortly after that survey was approved he made entry thereon and secured a patent for lot 1, and thereafter, evidently believing that it included all of the springs aforesaid, he continued to occupy and use the place as before, and erected buildings and other improvements thereon. As he was occupying the springs when the government survey was made, and took them up for entry very shortly afterward, when the corners and marks of the survey must have been visible and well known, and as his main purpose was to secure possession of the springs, it is improbable that he should have been mistaken in the location of the springs with reference to the boundary lines. His conduct is strong evidence against the finding of the court. These circumstances sufficiently show that the location of the

corner as fixed by the court was at all events not the location thereof as fixed by the original government survey. The discovery of any additional evidence tending to fix the location "on top of ridge," as stated in the field-notes, would be strong reason for directing a new trial.

It is not clear that either the court below or the surveyors for the plaintiff correctly understood the rule with respect to the application of the proportional method of locating lost corners. In *Weaver* v. *Howatt,* 161 Cal. 84, [118 Pac. 522], the court said: "The trial court must ascertain, as near as may be, where this monument was set by the government surveyor. If the exact spot cannot be found, it must, if possible, decide from the data appearing in evidence, its approximate position, and the proportional method is to be used only when no other reasonable method is possible, and it must be so used that it does not contradict or conflict with the official data that are not impeached, and which, when not impeached, confine the actual position within certain limits. The application of the proportional method must, in that case, be also confined to the same limits"; and further, "It is for the trial court, upon all the evidence, to fix the place at a point where it will best accord with the natural objects described in the field-notes as being about it, and found to exist on the ground, and which is least inconsistent with the distances mentioned in the notes and plat." This doctrine was affirmed in *Weaver* v. *Howatt,* 171 Cal. 302, [152 Pac. 925], being a second appeal upon the same case after an intervening trial. It is doubtful whether or not, in view of this rule, the court could in any event relocate the corner otherwise than "on top of ridge" referred to in the field-notes. The newly discovered evidence would tend at least to locate it much nearer to that point.

The affidavits in support of the motion for a new trial show that the only surviving member of the crew of assistants of the government surveyor for the survey of 1876 was one William Blann, who resided in Woodland, in Yolo County. The map and field-notes of the survey, a copy of which was introduced in evidence at the trial, did not give the names of the assistants. After the trial the fact that Blann was one of them, and that he was living in Yolo County, was discovered. He was taken to the premises, and made affidavit that the mound of stones claimed by the defendants to be the true

location of the corner in dispute is the same mound of stones which he assisted to set for that corner in making the survey of 1876. There was no evidence given at the trial by any witness who claimed to have seen this mound at or near the time of the making of the survey. By counter-affidavits it was shown that Blann had resided at Lower Lake, near the premises. in question, for many years prior to 1897, and that he then removed to Woodland, Yolo County, where he has ever since resided, and that the record of the government survey showing his name as one of the assistants was in the land office at San Francisco. It may be conceded that so far as Blann's residence is concerned, the court below may, in its discretion, have properly refused a new trial, on the ground that due diligence was not exercised in endeavoring to find it before the trial. Nevertheless, it tends to throw doubt upon the accuracy of the court's finding. But the affidavits of defendants further show that after the trial the defendant Hoberg and others made a careful search of all of the north line of section 4, and that at a point some forty-three chains easterly from the northeast corner of section 4 they found a mound of stones with a decayed square stake lying therein marked on its north side with the characters "¼ S"; that it showed great age, and that the south side was so weatherbeaten that nothing could be discovered thereon; that the mound was covered and hidden by a low, thick, hollyberry bush, which had apparently grown over and around it after it had been made. The field-notes of the survey state that the surveyor set a post in a mound of stones at said quarter-section corner, marked on the north and south sides, respectively, with the aforesaid characters. This evidence is not contradicted by counter-affidavits. It is almost conclusive evidence of the location of the quarter-section corner on the north line of section 4. The fact that the plaintiff's surveyors, three in number, searched this line and were unable to find this corner; that the defendants' surveyor had also searched the line before the trial, and failed to find it, and that it was so concealed by the bush as above mentioned, sufficiently absolves the defendants from the charge of lack of diligence in failing to discover it before the trial. Its position has an important bearing on the proportional method of location. If it be admitted that the evidence of Blann should be disregarded, and that the monument claimed by the

defendants to be the northeast corner of section 5 must also be disregarded, and the corner treated as a lost corner, then in applying the proportional method, this newly found quarter-section corner must be taken as the eastern limit of uncertainty, and the space between that quarter-section corner and the quarter-section corner on the north line of section 5 is the distance which is to be divided into four parts. According to the affidavits, if this is done and the section corner located accordingly, the corner of section 5 would be fixed some two hundred feet westerly of the location thereof, as established by the court, and the division line in dispute would be a corresponding distance westerly of the springs in question, thus saving to the defendants the property which they and their predecessors in interest had for so many years in good faith enjoyed and claimed. While this court seldom interferes with the discretion of the trial court in denying a motion for a new trial for newly discovered evidence, yet in view of the peculiar nature of the question involved, we believe this to be one of the exceptional cases in which the action of the court below in refusing a new trial should be overruled.

The judgment is vacated and the order denying a new trial is reversed.

Sloss, J., and Lawlor, J., concurred.