[Civ. No. 5576.   Third Appellate District.—November 23, 1936.]

THE PEOPLE et al., Respondents, v. GEORGE F. COVELL, Appellant.

A. J. Carlson for Appellant.

Leslie A. Cleary, District Attorney, and Frank B. Collier, Deputy District Attorney, for Respondents.

PLUMMER, J.—Judgment was entered in favor of the plaintiffs in an action prosecuted against the defendant to compel him to remove or set back a certain fence alleged to be an encroachment upon the public highway now known as "Ward Avenue". From this judgment and the penalties attendant thereon the defendant appeals.

The contention principally relied upon in this appeal by the defendant is that the testimony fails to show any encroachment by the defendant's fences upon any part of the road as originally laid out and established. A review of the testimony upon which the plaintiffs rely, to wit, a survey made by a deputy county surveyor by the name of McMath,

as hereinafter set out, we think establishes the contention of the defendant beyond controversy.

The record shows that in 1872 the county surveyor of the county of Stanislaus by the name of G. B. Douglass, surveyed and laid out the proposed road; that this road as surveyed and laid out by Douglass was approved by the board of supervisors and was created a public highway with a width of 33 feet on each side of a certain range line described in the survey. The record of this survey is set out in the transcript as it appears in the clerk's office of the county of Stanislaus, and which was followed by the board of supervisors in creating and establishing the public highway under consideration in this cause. This survey shows the finding and the starting of the survey of a certain United States corner as surveyed by officers of the United States government. The survey also shows the finding of two other corners established by United States surveyors. The range line is designated in the Douglass survey, the width of the road staked out, the different section corners are specified, distances set forth therein, and practically everything necessary to show the lines of the Douglass survey as they were then laid out and delineated along the course of the highway proposed to be established and which were followed by the board of supervisors in establishing the highway, a part of which is now known as ''Ward Avenue''.

The record before us shows that no attempt was made to locate the United States corners found and mentioned in the Douglass survey by the surveyor upon whose report judgment was entered in this case, nor was any attempt made to ascertain and follow the lines of the Douglass survey. The record shows that the Douglass survey was absolutely ignored by the surveyor upon whose report or survey the court found encroachment by the defendant's fences upon Ward Avenue. In his opinion, which, of course, is not binding, the court remarked that the Douglass survey was doubtless correct, having been made only a short time after the establishment of the government corners by United States surveyors, but in its findings and conclusions the court overlooked the fact that the Douglass survey and the lines thereof, whether correct or incorrect, establishing the highway part of what is now known as ''Ward Avenue'', and so declared by the board of supervisors, became the fixed lines

of that public highway. In his survey Mr. McMath came to the conclusion that the east line of the defendant's property encroached upon the westerly portion of Ward Avenue, at a distance varying from 6 to 8 and 10 feet at different places.

It appears in the record that McMath furnished one Steger, a draftsman, with certain data for the preparation of a map which was used upon the trial. The very beginning of Mr. McMath's testimony shows that it furnishes no basis for the conclusion that the defendant's fence constitutes an encroachment upon Ward Avenue. In furnishing data to Mr. Steger for the preparation of the map, it appears that the surveyor started from the corner of the intersections of sections 25, 30, 31 and 36, and the accuracy of the location of this corner was established in the following manner: ''Q. Now, on what data did you base the information that you gave him concerning the location of that corner? A. Why, from actually measuring to the corner from the various fences. Q. From fences only? A. Yes.'' Not a single witness was introduced in the case who testified that the defendant's fence is an encroachment upon Ward Avenue as the lines thereof were laid out by the Douglass survey, and for all that the record shows, the westerly line of Ward Avenue may be absolutely coincident with the fence which for many years has stood alongside of said Ward Avenue, and which is now maintained by the defendant. Not a single witness made any attempt to locate the lines of the Douglass survey. As we have said, the Douglass survey was made only a short time after surveys were made and corners established by United States deputy surveyors, all of which appears to have been ignored by the later surveyors. Several surveys have been made by different persons for private purposes which appear in the testimony of Mr. McMath, none of which give any attention whatever to the Douglass survey.

While the appellant has cited a number of cases having to do with property lines in cities which have been' established and maintained for a number of years as constituting the lines which could not be disturbed by later surveys differing from the original survey, the principle involved in this case is really the same as that involved in the case of *Churchill Co.* v. *Beal,* 99 Cal. App. 482 [278 Pac. 894], where it was sought by a later survey to move the lines established by a prior survey. This court held that whether accurate or in-

accurate, the original survey granting and establishing certain rights, fixed the rights not only of the government, but of the landowners, and that the government, after establishing such a line and granting and conveying certain rights, possessed no power thereafter to change the course of that line. That principle is applicable here. When the Douglass survey was made and the report thereof giving all the data necessary to establish the survey showing the lines followed, the government corners found, and such data as ordinarily appears in report of a surveyor in laying out a public highway, and that report being adopted by the board of supervisors, and the road laid out by Douglass, that highway so surveyed by Douglass became fixed, and so far as rights of the county are concerned and the rights of landowners adjacent thereto are affected, no change thereafter could be made. The rights of the respective parties, and the lines of the highway were limited and fixed by the Douglass survey. That this is the rule is clearly shown by the excerpt which we quote from the Churchill case, *supra:* ''That is the limitation involved in this action. The resurvey was made subsequent to the time when the government had parted with its title, and its power to recapture any of the lands theretofore sold to the plaintiff by means of a resurvey, or otherwise, was wanting. If the original survey, as made by McKay, fixed the westerly boundary of the lands granted to the plaintiff and the plaintiff's grantors as found by the trial court, then, and in that case, whether the line as originally located was correct, becomes immaterial. It is the correct line in the determination of this action, as it fixes on the grounds the lands covered by the patents, the ownership of which has passed to the plaintiff in this action. The following California cases support the rule which we have just herein set forth: *Kimball* v. *McKee,* 149 Cal. 435 [86 Pac. 1089] ; *Foss* v. *Johnstone,* 158 Cal. 119 [110 Pac. 294] ; *Weaver* v. *Howatt,* 161 Cal. 77 [118 Pac. 519] ; *Weaver* v. *Howatt,* 171 Cal. 302 [152 Pac. 925] ; *Spiers* v. *Spiers,* 176 Cal. 557 [169 Pac. 73] ; *Wilmon* v. *Aros,* 191 Cal. 80 [214 Pac. 962]. Practically all of the cases herein referred to support the principle that in making a resurvey to determine the boundaries of lands which have been granted, the tracks of the original survey should be followed, so far as it is possible to discover the same, and locate upon

the grounds the lines of the lands patented as nearly as may be according to the original survey thereof and in reference to which lands have been sold.''

The record further shows that none of the surveyors in the surveys made after Douglass' survey in 1872, made any attempt to check the field notes of the Douglass survey, and several of the surveyors did not make any checks to ascertain if their surveys agreed with the conclusion of the government surveys. The first of the later surveys was made some thirty years after the Douglass survey, according to which the highway part of which is now known as ''Ward Avenue'' was laid out.

The testimony is further to the effect that some of the lines along the highway show that in extending back therefrom, instead of being 5,280 feet as a mile should be, covered only 5,250 feet. This appears in one of the lines of section 36. The report of the Douglass survey as found in the transcript is too lengthy to be set forth herein, but establishes everything which we have heretofore said, and as shown by the testimony of McMath, was not followed, and that no attempt was made to ascertain the lines of the highway involved herein as originally established, but that it was simply sought to establish the highway and the respective lines thereof made of later surveys, starting from a corner a certain distance from certain fences, as we have stated herein.

As the testimony in the case is challenged as being insufficient to support the findings and judgment of the trial court, it becomes necessary to set forth herein what appears to be the testimony of the surveyor McMath, upon which the findings and judgment rest. It may be here observed that McMath testified that they had no records of any government corners in their office, of which mention is made in the Douglass survey. The record shows that those corners are mentioned and designated in the reports of the Douglass survey, which were not considered by McMath in making his survey. The testimony of Mr. McMath which we have been discussing is as follows, to wit:

''Q. Did you take into consideration any government surveys? A. There is no government monument at that place. Q. Did you make any investigation for a government monument in the neighborhood from which you could make a measurement or take a reading? A. From past records. We

have no record of any government corners in there, so I didn't dig up the whole country to find one. Q. Mr. McMath, you know from your investigation of this matter, that this road was laid out in 1872, pursuant to a survey made by Mr. Douglass, do you not? A. Yes, I know of that. Q. And you have seen the Douglass map, have you not? A. No, I haven't seen the Douglass map. Q. Haven't you examined the Douglass map? Have you read the description of the road? A. Yes. Q. Which was included in the report of the Douglass map or with the Douglass Survey? A. I read a copy of it. Q. You have read a copy of it. I assume, Mr. McMath, that the copy you read corresponds with the original notes which are in evidence in this case? Now, did you endeavor to locate the Douglass Survey on the ground? A. No, sir. . . . Q. But did you ever find Mr. Douglass' corners? A. No, sir. Q. Do you know where he ran this line on the ground? A. No, sir. Q. Then, you are not prepared to say, are you, that the west line of the road as it now exists, isn't identical with the west line of the road as laid out by him? A. No. Q. It may be exactly the same position? A. I don't know. Q. You don't know. In establishing the northerly corner here on that drawing, you didn't check against the Douglass survey at all? A. No. Q. And in checking the township corner at the southeast corner of section 36, you didn't check against the Douglass Survey? A. Only checked against the 8-inch concrete monument by Finney. Q. You checked against the monument set there by Mr. Finney? A. Yes, sir. Q. And do you know when that monument was set? A. Set in June 21, 1904. Q. You are good for dates, aren't you? Now, you were not present when Mr. Finney made his survey? A. No, sir. Q. You don't know how the survey that he made corresponds with the Douglass Survey of 1872, do you? A. No. Q. It may not correspond at all? A. I don't know. Q. And when you set the corner at the southeast corner of section 1, what did you use for information? A. Sandstone rock, with an X, cross, marked on the top of it. Q. Do you know how long that rock had been there? A. No. Q. Do you know how that corresponded with the range line as established by Mr. Douglass? A. No, I don't know. Q. You don't know whether the range line as established by Douglass was east or west of that point or exactly on the point, do you?

A. No. Q. And the same applies to the corner that you established at the southeast corner of section 12? A. Yes. Q. And also at the quarter section corner, you established between sections 36 and 31? A. Yes. Q. And to the quarter section corner you established between sections 1 and 6, in township 6 south? A. Yes. Q. Between ranges 7 and 8 east. Now, Mr. McMath, in establishing the corner at the northeast corner of section 36, did you run a line west at all, to any other corner? A. No, sir. Q. You did not measure that line then, if I understand you correctly, from the northeast corner of section 36? A. No. Q. And you do not know, and do not pretend to say whether or not that corner that you have testified to as being located in the northeast corner of section 36, is a mile, 5280 feet east, more or less, of the northwest corner of section 36, do you? A. No, I don't know. Q. You don't know whether or not as an actual fact, it is only distanced 5250 feet from the northwest corner of section 36? A. I don't have any idea about it. Q. You haven't any idea about that? The same would apply to the corner on the southeast corner of section 36? A. Yes. Q. You don't know what the distance of that corner is from the southwest corner of section 36? A. No, sir. Q. Do you know what the distance of that corner is from the corresponding corner approximately 6 miles west? A. No. Q. On the other township line? A. No. Q. You don't know whether or not there is a shortage there or not, do you? A. Not for certain. Q. Well, as a matter of fact, there is a shortage, isn't there? A. I don't know. Q. The corner which you found and which you have testified to in this case as being, in your judgment, the corner of those four sections, did you measure the distance from that corner to the west line of the section? A. No, sir. Q. And you don't know whether that corner is actually 5280 feet east of the corner on the west line of the section? A. No. Q. Now, Mr. McMath, you ran a survey even farther south than this, did you not? A. Yes, sir. Q. Did you run a survey to the south line of the township? A. Yes, sir. Q. And you established a corner at the south line of the township, did you not? A. I found one there. Q. You found one. And what evidence of a corner did you find there? A. Found a 5x5x18-inch concrete monument, set by Townsend under Hoskins. Q. When was that done? A. I will have to have my original

634

notes to tell you that. Q. Yes, I meant to give them to you. Return them to the clerk. A. I beg your pardon, I haven't got it, but I can give you the date of the survey. Q. We won't quarrel over a day or two. A. It was in March, 1922. Q. Is that what is known as the Isom Survey? A. No. Q. It was not. Do you know when the Isom Survey was made? A. No, I don't; the records will show. Q. You have a record of the Isom Survey here, haven't you? A. Yes, sir. Q. Now, the Isom Survey, the so-called Isom Survey, was made on August 28th, 1916. A. Yes, sir. Q. Now, will you tell the court what the document is that you are examining at this time, Mr. McMath? A. It was survey of the petition in 413 of W. H. Isom, et al., in road district No. 5, 5-B. Q. By whom was the survey made? A. It was made by Hoskins under E. H. Annear. Q. Is the record that you are now examining one of the official records of the county engineer's office of this county? A. Yes, sir. Q. Now, I will call your attention to the south line of Section 24, township—that would be township 6 south, range 7 east, wouldn't it? A. Yes. Q. That is correct, isn't it? A. Yes, that is right, township 6 south, range 7 east. Q. That shows according to this survey the south line of section 24 S., 79 chains and 20 links? A. That is according to this, yes. Q. Now, Mr. McMath, do you know how that compares with the government survey of the same line? A. No, I haven't the records at my finger-tips. Q. Have you looked up the records so you can tell us? A. I don't remember what they are; I have looked at them. Q. Now, before we proceed with that question, Mr. McMath, will you kindly tell me what the document you are now examining and to which your attention is called— A. It is the government official maps. Q. That is, it is a certified copy? A. Certified copy. Q. Of the original government maps? A. Of the original government maps. Q. Made by the United States surveyors under supervision of the Surveyor General. A. That is right. Q. In July, 1874? A. Yes. Q. And now, what does that show, Mr. McMath, to be the distance of the south line of section 24, township 6 south, range 7 east? A. 79.8 chains. Q. There isn't a difference? A. 80 chains and .8 is the same. Q. How long is a link? A. 7.92 inches. Q. Practically 8 inches. So that represents a difference between the so-called Isom Survey and the government survey, of how much? A.

60 links. Q. And now calling your attention to section 23, is there a difference between the Isom survey made by Mr. Hoskins and the U. S. official survey? . . . A. There is a difference. Q. Of how much? A. 62 links. Q. 62 links. And the result of the difference between the government surveys and the Isom survey, in so far as the south line of sections 23 and 24 are concerned, is that the Isom survey would put the range line at least 120 links east, wouldn't it? A. I wouldn't say that. Q. What would be the effect of these differences then, Mr. McMath, to be entirely fair to you? A. The government distances in no case absolutely check it, equalize it. Q. That is correct; I agree with you. A. We run—to locate a corner, we proportion back. Q. Yes. A. To make the corrections. Q. In other words, that is engineering practice, to apportion back and to adjust and equalize, isn't it? A. Surveying practice. Q. Now, Mr. McMath, is the Isom survey in any way at all tied in with the location of Ward Avenue? A. Not the part that is involved in this suit. Q. Yes, but the Isom survey was made by Mr. Hoskins? A. Yes, sir. Q. Who was a deputy county engineer at the time the survey was made? A. That is correct. Q. Does it correspond with the other surveys that he made? A. Which? Q. Upon which you predicate your testimony with reference to the location of this road? A. I say his is the same as what I find, approximately the same. Q. It is the same as you find? A. Yes, on Ward Avenue. Q. On Ward Avenue? A. That is right. Q. And you didn't consult the Isom survey in this particular matter, Mr. McMath, because you didn't find it was necessary to go quite that far south, is that it? A. That is right. Q. Well, you did go south as far as the Isom survey, however, didn't you? A. We didn't take the Isom survey into consideration, though. Q. But the Isom survey shows a portion of Ward Avenue, doesn't it, in a portion of section 24, a portion of the south half of section 24? A. Well, it has it indicated here. Q. You checked against that didn't you? A. No. Q. You didn't check against that? A. No. Q. Now, did you make any survey or readings or check against the U. S. surveys, certified copies of which are in the engineer's office, in so far as the east and west lines on the south side of section 12 were concerned? A. No. Q. Or section 1? A. No. Q. Or section 13? A. No. . . . Q. And the Isom survey, that is the Sur-

vey No. 517, is short, isn't it; it is 62 links less than the government survey? A. It is 62 links less than the government survey. Q. In section 24, survey 517, known as the Isom survey, it is 60 links shorter than the government survey? A. Yes, sir. . . . Q. The dashes with the little crosses. Are you able to say that that fence at any point is east of a point 33 feet west of the range line as established by Mr. Douglass? A. No, I am not."

The witness McMath, on his direct examination, as we have said, testified that according to his survey the fence belonging to the defendant situate along the westerly line of Ward Avenue, encroaches upon the highway, but the *résumé* of his testimony which we have set forth shows absolutely no basis for supporting a judgment to that effect, which shows no attempt to ascertain the lines established by Douglass, and according to which the highway was laid out and devoted to public use.

In order to lay the basis for determining whether a fence belonging to the defendant constitutes an encroachment, it is necessary for the People to establish as nearly as may be, the lines of the Douglass survey according to which the rights of all the parties were fixed and still remain fixed, and these lines and these rights cannot be changed by subsequent surveys which ignored the original survey in accordance with which the highway was established. Until it is shown that the fence belonging to the defendant encroaches upon the highway according to the lines established by Douglass, and declared by the board of supervisors, no cause of action is set forth.

The judgment of the trial court is reversed.

Pullen, P. J., and Thompson, J., concurred.