[Civ. No. 15186. First Dist., Div. Two. Aug. 24, 1953.]

Estate of JOHN DAVID NOONAN, Deceased. ELLEN MURPHY et al., Appellants, v. PHIL C. KATZ, as Administrator, etc., et al., Respondents.

Andrew F. Burke and Henry J. O'Connor for Appellants.

Lamson, Jordan & Walsh for Respondents.

DOOLING, J.—On this appeal the appellants attack the determination of the probate court that they are not first cousins of the decedent on his mother's side and hence equally entitled to inherit with the three respondents who are first cousins, two on his father's and one on his mother's side.

The decedent, John David Noonan, died intestate with no nearer relatives surviving him than first cousins. In proof of her claim of heirship respondent, Agnes Sullivan Coffey, submitted an affidavit in which she stated that she was the daughter of Catherine Murphy Sullivan, and the granddaughter through her mother of John Murphy and Mary Hayes Murphy; and that the decedent was the son of Mary Murphy Noonan, who was the sister of affiant's mother and the daughter of John Murphy and Mary Hayes Murphy. She listed as the only children of her said grandparents six persons, the other four being named as Margaret Murphy, who

"died a spinster in Oswego some time around 1925"; William Murphy, "who died many years ago in Iowa"; Ellen Murphy Regan; and "_____ Murphy, (male) who died a great many years ago in Ireland leaving no issue." She stated that Ellen Murphy Regan had nine children, Mary, Adelaide, Joseph, William, Margaret and Dennis, all of whom died in Oswego; Katherine, who died in Rochester; and Harriet and Ella, who died in Minnesota. She listed one brother and four sisters, the children of her own mother and father, four of whom died in Oswego, the latest, Mary, in 1930.

The appellant Margaret Murphy O'Kennedy in her affidavit claimed a descent with the decedent from common grandparents, Jeremiah Murphy and Mary Ellen Hayes (also spelled Heas) Murphy. She listed eight children as having been born to these grandparents: Mary Murphy Noonan, the mother of the decedent; John Murphy, the father of the affiant and of Ellen Murphy (another of the appellants), living in Ireland, and of two other children deceased; William Murphy who "died without issue in Iowa"; Catherine Murphy who "died in infancy"; Margaret Murphy who "never married and died at Oswego, New York, on May 17, 1921"; Ellen Murphy Regan; Anne Murphy Sullivan; and Timothy Murphy. As children of Timothy Murphy living at the time of decedent's death (all in Ireland) she listed Anne Murphy Sheehan, Timothy Murphy, Elizabeth Murphy McCarthy and Jeremiah Murphy (since deceased). She also named two children of Ellen Murphy Regan: Kate Regan Lewis who "died at Rochester, New York," and Dennis J. Regan, who "died at Oswego, New York."

It will be seen from a comparison of the testimony contained in these two affidavits that while they coincide remarkably in many particulars, they each exclude the possibility of heirship in the other. The name of the grandfather given by Mrs. Coffey is "John"; the name of the grandfather given by Mrs. O'Kennedy is "Jeremiah." The names of the grandmother "Mary Hayes" and "Mary Ellen Heas" or "Hayes" are not necessarily inconsistent, especially when we remember the penchant of the Irish for pronouncing "tea" as "tay." While Mrs. Coffey lists a "_____ Murphy, (male)," who might be the John Murphy who is Mrs. O'Kennedy's father, she asserts that he "died a great many years ago in Ireland leaving no issue," which, if believed, would exclude Mrs. O'Kennedy. While Mrs. O'Kennedy lists a Catherine, which

is the name given to her mother by Mrs. Coffey, Mrs. O'Kennedy asserts that Catherine "died in infancy," which, if believed, would exclude Mrs. Coffey. Likewise no Timothy is found in Mrs. Coffey's affidavit, unless it be "_____ Murphy (male)" who "died without issue," thus excluding the four appellants, children of Timothy; and the Anne Murphy Sullivan listed by Mrs. O'Kennedy, does not appear among the children of her grandparents listed by Mrs. Coffey.

The similarities in other respects, however, are equally striking. Both have a spinster Aunt Margaret Murphy who died in Oswego in the 1920's; both have an Aunt Ellen Murphy Regan and each coincide in the names and place of death of two of her children, Katherine or Kate who died in Rochester and Dennis, who died in Oswego; the five Christian names given by both as children of the grandparents Murphy are the same and both agree that William died in Iowa. Were this all of the evidence we would be bound under the conflict of evidence rule to accord finality to the finding of the probate judge in favor of Mrs. Coffey and against appellants, despite the similarities of the two affidavits above pointed out.

However appellants, in addition to the affidavit of Mrs. O'Kennedy, introduced the affidavits of two daughters of Dennis Regan, Emma Regan O'Brien and Mary Regan Belknap. Before dealing with these affidavits we reiterate that both Mrs. O'Kennedy and Mrs. Coffey listed among their aunts Ellen Murphy Regan and both agreed that Ellen Murphy Regan had a son Dennis Regan, who died in Oswego, New York.

Through her affidavit Emma Regan O'Brien deposed that she is a daughter of Dennis J. Regan, who died in Oswego on April 22, 1924; that the parents of her father were Jeremiah Regan and Ellen Murphy Regan; that her grandmother, Ellen Murphy Regan, had a sister, Margaret Murphy, who resided in Oswego, who never married and died in Oswego on May 17, 1921. She frequently discussed with her grandaunt, Margaret Murphy, the family history and knows that she had a sister, Catherine Murphy, who married a man named Sullivan and had a daughter, Agnes Sullivan, who married a man named Coffey; that she had a sister who married William Noonan and was the mother of John David Noonan, the decedent; that she had three brothers, Timothy, William and John; that John married a woman named Julia Shanahan or O'Shannon and had two living children, Ellen Murphy in Ireland and Margaret Mary Murphy who married O'Kennedy.

The affidavit of Mary Regan Belknap was to like effect adding that she was the administratrix of the estate of her grandaunt, Margaret Murphy, and that from information given by said Margaret Murphy ''I know as part of the history of the immediate family of my paternal grandmother, Ellen Murphy Regan, that Mary Murphy Noonan, mother of John David Noonan, the decedent above named, was a sister of my said grandmother, and of my said grandaunt, Margaret Murphy, and that she had a sister Catherine Murphy, who married a Mr. Sullivan and was the mother of Agnes Sullivan, who later married a Mr. Coffey; also that said Mary Murphy Noonan had three brothers, to wit: Timothy Murphy, William Murphy and John Murphy, and . . . John Murphy married Julia 'Shanhan' or 'O'Shannon,' and had two living children, who were Ellen Murphy . . . and Margaret Murphy, who married John Joseph Karby O'Kennedy . . .''

These affidavits, if believed, establish without question that appellants O'Kennedy and her sister Ellen Murphy are first cousins of respondent Coffey and of the decedent. Appellants argue that these two affiants are disinterested witnesses, being cousins once removed of the decedent and hence not entitled to inherit from him, that their testimony is unimpeached and uncontradicted and it was an abuse of discretion for the probate judge to disregard it. Respondents reply that their testimony is not only inconsistent with the affidavit of respondent Mrs. Coffey but equally with the affidavit of appellant Mrs. O'Kennedy; and it is obvious that if the affidavits of Mrs. O'Brien and Mrs. Belknap are correct the affidavits of Mrs. O'Kennedy and Mrs. Coffey are both false in certain particulars. ▮ The weighing of evidence is the function of the trial judge and on appeal we are powerless to usurp that office however strongly we may feel that had we been in his place we would have decided the conflicts otherwise.

However on motion for new trial the appellants produced for the first time the affidavit of a third witness, Ruth Miller Laing, and asked the court to grant a new trial on the ground of newly discovered evidence. As to the facts leading to the discovery of Ruth Miller Laing, Mr. Andrew F. Burke, one of appellants' attorneys, filed an affidavit in support of the motion for new trial in which he deposed that in a letter from Mrs. O'Brien dated December 12, 1950, he was informed that Mrs. O'Brien had a maternal aunt, Anne Murphy, who married one Sullivan and had three daughters the issue of her marriage with Sullivan, two of whom might be living.

"This was the first information I had ever received of the fact that Anne Murphy, maternal aunt of the decedent, had left any children surviving her. . . . Recognizing the fact that if any of said daughters of said Anne Murphy Sullivan had survived the decedent, she would be a first cousin of the decedent, and, as such, be an heir of the decedent, I, immediately . . . commenced an investigation to ascertain whether either of the two daughters of said Anne Murphy Sullivan, not known by Mrs. O'Brien to be living or dead . . . was actually living or dead. I prosecuted my inquiries . . . for more than two months and finally in the early part of February, 1951, I learned (that the daughters were dead) . . . also, that the second of said daughters, Anne Sullivan Miller, had died in 1921, but had left her surviving a daughter Ruth Miller Laing. After further investigation and inquiry, I learned in the latter part of February 1951, that said Ruth Miller Laing was living in Fairfield, Connecticut. I immediately got in touch with her, and through the aid of information supplied by her, I prepared an affidavit for execution by her . . . I did not learn of the facts stated in said affidavit of said Ruth Miller Laing, nor even know of the existence of said Ruth Miller Laing . . . prior to the making of the court's decision . . . or the making of the final decree of distribution . . . and could not reasonably have learned either of said facts or of the existence of said Ruth Miller Laing prior to any of said happenings."

We have quoted at such length from Mr. Burke's affidavit because of the strong showing of diligence which the law requires to justify the granting of a motion for new trial on the ground of newly discovered evidence. (20 Cal.Jur., New Trial, § 59, p. 84.) Under the circumstances of this case we are satisfied that Mr. Burke's showing of diligence is sufficient.

The affidavit of Mrs. Laing shows her to be the daughter of Anne Sullivan Miller who in turn was the daughter of Anne Murphy Sullivan. It asserts that Agnes Sullivan Coffey (respondent herein) is the daughter of Catherine Murphy Sullivan and that Margaret Murphy O'Kennedy (appellant herein) is the daughter of John Murphy; that John Murphy (Mrs. O'Kennedy's father) was a brother of affiant's grandmother, Anne Murphy Sullivan; that Agnes Sullivan Coffey's mother, Catherine Murphy Sullivan, was a sister of the same grandmother and that Mrs. O'Kennedy and Mrs. Coffey are first cousins of one another and of the decedent, John David

Noonan. ■ So far this affidavit is only cumulative of those of Mrs. O'Brien and Mrs. Belknap and falls under the settled rule that a new trial may be denied where the newly discovered evidence is merely cumulative. (20 Cal.Jur., New Trial, § 62, p. 94.)

■ However the affidavit of Mrs. Laing contains other evidence not theretofore before the court which impresses us as highly important in character. We quote from her affidavit: "prior to her marriage, said Margaret Murphy O'Kennedy lived in Oswego, New York, with a maiden aunt, Margaret Murphy, who was a sister of her father and was a sister, also, of my maternal grandmother, Anne Murphy Sullivan; also that while said Margaret Murphy (later O'Kennedy) was living with her aunt, Margaret Murphy, said Mary Sullivan Keefe (sister of said Agnes Sullivan Coffey) lived just a block away from the home of said Margaret Murphy, in Oswego, New York, and that she and her sister, Agnes Sullivan Coffee (sic), frequently, visited the home of said Margaret Murphy and there met their cousin, Margaret Murphy (later O'Kennedy), and that both of them were well acquainted with said Margaret Murphy (later O'Kennedy)."

Thus through this newly discovered evidence the two opponents, Mrs. O'Kennedy and Mrs. Coffey, are brought together face to face as cousins visiting with one another at the home of their spinster aunt, Margaret Murphy. Whatever shadow of doubt might have existed as to whether the spinster aunt Margaret of each was the same person, or if the same person whether one or the other was falsely claiming her as an aunt, is thereby resolved.

There are many features of the case which tend to corroborate the appellants' witnesses, of which we will here mention only the following: The Murphy family of Mrs. O'Kennedy and Mrs. Coffey revolves about Oswego. Not only the spinster Aunt Margaret, but the claimants Mrs. O'Kennedy and Mrs. Coffey, and many of the other relatives mentioned by each lived at one time or died in Oswego. The cousins Harriet and Ella Regan mentioned by Mrs. Coffey as having died in Minnesota were the aunts of the witnesses Mrs. O'Brien and Mrs. Belknap, were at the funeral of the mother of the decedent, John D. Noonan, and are mentioned in a newspaper account of her funeral: "Among those from a distance attending the last sad rites were . . . her nieces, the Misses Ella L. and Harriet B. Regan of Minneapolis." Furthermore the bridesmaid at Mrs. O'Kennedy's wedding in Oswego was

Katherine D. Keefe, identified as a niece of Mrs. Coffey's, the daughter of her sister Mary.

Absent wholesale perjury of a group of witnesses with no pecuniary interest, of which we can find no evidence in the record, the proof of appellants' relationship to respondent Mrs. Coffey and to the decedent, when the additional facts sworn to by Mrs. Laing are added to those already in the record, appears almost overwhelming. It is the primary function of the courts to see that justice is done among litigants and an examination of this record so strongly suggests that justice has not been done in this case that the newly discovered evidence should be considered by the probate court in reaching its ultimate decision. Otherwise it appears that a grave injustice may be worked on the appellants. We contend ourselves, as expressing our conclusion, with a quotation from *Spiers* v. *Spiers,* 176 Cal. 557, 563 [169 P. 73] : "While this court seldom interferes with the discretion of the trial court in denying a motion for new trial for newly discovered evidence, yet in view of the peculiar nature of the question involved, we believe this to be one of the exceptional cases in which the action of the court below in refusing a new trial should be overruled." (See also *Bowler* v. *Roos,* 213 Cal. 484 [2 P.2d 817] ; *Blewett* v. *Miller,* 131 Cal. 149 [63 P. 157] ; *Spear* v. *United Railroads,* 16 Cal.App. 637 [117 P. 956].)

The decree appealed from is reversed.

Nourse, P. J., concurred.