[Civ. Nos. 17384, 17455.   First Dist., Div. Two.   Sept. 11, 1957.]

ROSE MARIE PAINE, Respondent, v. WILLIAM THOMAS PAINE, Appellant.

[Two Cases.]

Frisbie & Hoogs for Appellant.

Lawlor, Veres & McKibben and Eugene K. Lawlor for Respondent.

DOOLING, J.—Appeals are here presented by the defendant: 1. from an interlocutory decree of divorce; 2. from an order allowing an attorney's fee and costs to plaintiff in

resisting a motion for new trial; and 3. from an order allowing an attorney's fee and costs to plaintiff to oppose the appeal from the interlocutory decree and the first order and for alimony pending that appeal.

On March 8, 1955, respondent filed an action for separate maintenance against appellant. In the complaint for separate maintenance respondent alleged that there was community property of the parties consisting of equities in two parcels of real property and certain personal property. No mention was made therein of any deeds from appellant to respondent of this real property nor of any property settlement agreement. On the date of trial, November 1, 1955, respondent by stipulation filed an amended complaint praying for divorce. The amended complaint alleged that there was no community property and alleged the execution of a property settlement agreement by the parties on December 23, 1954, a copy of this alleged agreement being attached as an exhibit. On the trial after this agreement and deeds by appellant to respondent of the two parcels of real property had been introduced, supported by the testimony of respondent and the notary who had acknowledged all three that they had been signed and acknowledged by appellant, the appellant testified that while the signatures looked like his he had never knowingly signed any of them. He further denied that he had been in the notary's office on December 23, 1954, or at any other time, the notary and respondent having testified that appellant and respondent had gone together on December 23, 1954, to this office and that all three documents were executed by respondent in this office on that day.

Respondent's explanation of her failure to allege the execution of the deeds and property settlement in her original complaint was that she had lost them in the confusion attending her separation from appellant and that her attorney had advised her that it would be futile to allege them in her complaint if she could not produce them on the trial. In this latter testimony she was corroborated by her attorney's secretary, who was the one who had acknowledged their execution as notary. Respondent testified that she later located the deeds and found appellant's copy of the agreement, crumpled into a ball, in a carton of his books and papers which she had previously placed in a storage warehouse.

After two days of trial appellant was granted a continuance to November 16 to enable him to produce evidence corroborative of his testimony that he was not in the notary's office on

December 23, 1954, and for the further purpose of submitting the disputed documents to an expert for his examination and conclusion as to their genuineness.

The trial was again continued on November 16 to December 5. On that day the expert to whom the questioned documents had been submitted testified that in his opinion they all bore the genuine signature of appellant. Appellant at the same hearing produced records and oral testimony corroborative of his claim that on December 23, 1954, he was continuously at Highland Hospital from 8:30 a. m. to 12:30 p. m. This was important because respondent testified that they had met the notary at her office on that morning between 8 and 8:30 a. m. and the notary fixed the time at 9 a. m.

The trial court resolved this conflict in testimony in favor of respondent, found in favor of the due execution of the deeds and property settlement, and approved the property settlement but expressly refrained from incorporating its terms in the decree.

█ Appellant moved for a new trial, among other grounds on that of newly discovered evidence. His sole point on the appeal from the decree is that the court erred in denying a new trial on the ground of newly discovered evidence.

In addition to evidence purely cumulative of that presented at the trial the appellant offered to produce evidence: 1. That after leaving Highland Hospital he spent the afternoon of December 23, 1954, giving a physical examination for an insurance company to an applicant for life insurance, one Hollis (respondent filed an affidavit of Hollis contradicting this); and 2. The affidavit of one Bradford, an expert on questioned documents, who had examined the disputed property agreement and other documents introduced bearing appellant's purported signature.

The affidavit of Mr. Bradford recited the following findings concerning the property settlement agreement bearing date December 23, 1954: 1. That the signature page (p. 6) came from a different paper stock than the other five pages; 2. That the quality of the carbon deposit on the signature page is different from that on the other pages, which might have resulted from the use of a carbon paper with no other sheet above it in typing page 6; 3. That the appellant's signature is not in normal alignment with the typed underline beneath it; 4. That the signature lines are not in alignment with the typed matter; 5. That the signature page contains a fold under the slip on which the acknowledgment

appears, which is not present in the other pages or in the superimposed slip containing the acknowledgment; 6. That the carbon deposit on the acknowledgment slip is different from that on the last page to which it is attached but similar to that on the other pages. Mr. Bradford's affidavit concludes that the fact that the paper had been crumpled and later flattened makes an accurate examination extremely difficult, and that there are questions of measurement, texture of ink and significance of carbon deposit yet unanswered. (Respondent testified that she found the agreement badly crumpled and used a flat-iron to smooth it out.) As to an earlier property settlement dated 1947, a photostatic copy of which was in evidence, Bradford stated that an adequate examination of a photostat is nearly impossible.

Appellant argues that this proposed evidence indicates that the property settlement in its present form was not signed by him and that respondent and the notary were colluding to perpetrate a fraud upon him and the trial court. From this he argues that when, on motion for new trial, it appears probable that perjury has been committed, the court abuses its discretion in denying a motion for new trial.

The proposed evidence falls far short of establishing perjury or fraud. It is at best circumstantial evidence from which the trial court might, but would not be compelled to, draw inferences in appellant's favor. If all of the evidence contained in his affidavits were before the court it would still only create a conflict which the court might resolve against him. Appellant has been able to cite no California case in which, on anything like comparable facts, an appellate court has reversed an order denying a motion for new trial on the ground of newly discovered evidence.

A consideration of the cases cited by appellant in which the orders denying a new trial have been reversed will show that each was an extreme case in which the newly discovered evidence flatly and directly (and not by mere inference) contradicted the evidence relied on by the trial court and almost required a finding to the contrary.

In *Bowler* v. *Roos*, 213 Cal. 484 [2 P.2d 817], the evidence on the trial had shown a plaintiff to be subject to epileptic fits and constantly requiring care and attention. The newly discovered evidence showed that this plaintiff had been regularly employed, earning good wages and in good health.

In *Thomas* v. *Fursman*, 177 Cal. 550 [171 P. 301], defendant had testified that one Lee was not his agent. On motion

for new trial it was shown that defendant in another action had alleged in a verified complaint that Lee was his agent.

In *Spiers* v. *Spiers*, 176 Cal. 557 [169 P. 73], a description of real property was uncertain by reason of the failure to locate a corner marker. On motion for new trial it was established that the corner marker had since been located concealed in a growth of shrubbery.

In *Estate of Noonan*, 119 Cal.App.2d 831 [260 P.2d 247], a dispute as to heirship, the conflicting claimants had filed affidavits, each excluding the other from the necessary relationship. On motion for new trial the affidavit of a relative of both, not theretofore discovered, was produced which showed not only that each was an heir but that they had actually visited each other in the home of an aunt of both of them.

We refrain from discussing cases cited by appellant in which orders granting new trials were affirmed since they furnish no authority for reversing an order denying a new trial.

■ It is the general rule that the trial court has a wide discretion in granting or denying a motion for new trial and a clear abuse of that discretion must be shown in either case to justify a reversal. (20 Cal.Jur., New Trial, § 13, p. 27.) ■ Where the motion is on the ground of newly discovered evidence "the trial judge is generally in a much better position to determine the value and effect of the evidence and, therefore, to exercise such discretion, than the appellate court." (20 Cal.Jur., New Trial, § 58, p. 81.) ■ "To warrant the granting of a new trial on the ground of newly discovered evidence it must also appear to the court that there is reasonable probability that, upon a retrial, such evidence will change the result . . . The question as to the probable effect of the new evidence is, from its nature, peculiarly one that is addressed to the discretion of the trial court, and an appellate court will not interfere in the absence of an abuse of that discretion, i.e., unless the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial in view of the newly discovered evidence." (20 Cal.Jur., New Trial, § 61, pp. 92-93.)

The trial judge having heard the original testimony was in a better position than we to determine whether the newly discovered evidence would or should, if introduced on a new

trial, probably change the result. We must accept his conclusion on that issue, in view of the purely circumstantial character of such evidence.

The property settlement agreement approved by the court was an extremely generous one, binding appellant to pay respondent $300 per month or 40 per cent of his earnings, whichever was larger, for the life of the parties. ██ We have no doubt of the power of the court to make a reasonable order for alimony pending appeal, but the order should have been conditioned so that in case of the affirmance of the decree approving the property settlement agreement appellant would not be required to make double payments for respondent's support, i.e., it should have provided that any payment by way of alimony under the order should be credited as a payment under the property settlement. (*Sheppard* v. *Sheppard,* 161 Cal. 348 [119 P. 492]; *Farrar* v. *Farrar,* 45 Cal.App. 584 [188 P. 289].)

██ The orders for counsel fees and costs were also proper since respondent, while payments under the property settlement were held in abeyance pending appeal, had no reasonable ability to pay them. However, with the affirmance of the decree, respondent will receive at least 40 per cent of appellant's earnings and in fairness and equity we have concluded that appellant should be allowed a similar credit toward the payments under the property settlement agreement for payments made under these orders.

The interlocutory decree of divorce is affirmed. The order of April 19, 1956, allowing attorney's fees and costs and the order of June 29, 1956, allowing attorney's fees and costs and $300 per month for respondent's support are, and each of said orders is, hereby amended by adding thereto the following: "Provided, however, that all amounts paid by defendant hereunder shall be credited in favor of defendant in satisfaction pro tanto of defendant's obligation to make payments to plaintiff under that certain property settlement agreement dated December 23, 1954, and approved by the interlocutory decree of divorce entered herein." As so modified the orders are affirmed.

Kaufman, P. J., and Draper, J., concurred.

Petitions for a rehearing were denied October 11, 1957.